**UNITED STATES of America, Plaintiff,**

v.

**Joseph SIEGEL and Alvin Winograd, Defendants.**

**No. 78 CR 606.**

United States District Court, N. D. Illinois, E. D.

June 27, 1979.

Thomas P. Sullivan, U. S. Atty., Scott R. Lassar, Asst. U. S. Atty., Stephen P. Sen-

derowitz, Asst. U. S. Atty., Chicago, Ill., for plaintiff.

Jeffrey N. Cole, Harvey M. Silets, Harris, Burman & Silets, Royal B. Martin, Jr., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

CROWLEY, District Judge.

The indictment charges defendants with entering into a conspiracy to defraud the United States by impairing the Department of the Treasury in its function of collecting income tax,[1] aiding and assisting in the preparation of a fraudulent income tax return,[2] and entering into certain commodity futures trades described as "fixed, rigged, prearranged, non-competitive and risk-free" and "wash sales".[3]

The defendants are floor brokers on the International Monetary Market. The indictment charges that the defendants and others entered into an agreement through which Harold Brady, now deceased, would realize certain losses during one taxable year and a corresponding amount of gains during the next year. The method allegedly used to achieve this objective was to institute a series of unlawful transactions on the commodities futures market. The indictment also charges that defendants transmitted the information concerning the various gains and losses to Harold Brady's accountants for use in the preparation of his income tax return; and that as a result of their participation in this scheme, defendants received substantial commissions.

The defendants' major challenge to the indictment is based upon *United States v. LaMantia,* 2 Comm.Fut.L.Rep. ¶ 20,667 (N.D.Ill.,1978). In *LaMantia,* Judge Marshall held that an indictment charging "fictitious sales" was unconstitutionally vague. The defendants argue that although this indictment is different from that involved in *LaMantia* in form, the essence of the charges is identical. In support of their

1. 18 U.S.C. § 371.

2. 26 U.S.C. § 7206(2).

3. 7 U.S.C. § 6c(a)(A).

argument, defendants state that in an unsuccessful attempt to define "fictitious sales" in *LaMantia,* the government used virtually the same adjectives, i. e., fixed, rigged, non-competitive and prearranged, as were used to describe the acts resulting in this indictment. Therefore, defendants claim that the charge here amounts to no more than a prosecution for fictitious sales.

■ Defendants further argue that, by bringing this indictment for conspiracy to defraud the United States, the government seeks to circumvent *LaMantia* which forecloses prosecution for conspiracy to commit an offense against the United States when the underlying offense is the participation in fictitious trades. To permit this indictment to stand is said to allow the government to charge as criminal, under the second portion of 18 U.S.C. § 371, conduct that is proscribed by a law that has been declared unconstitutionally vague and could not be prosecuted under the first prong of 18 U.S.C. § 371.[4] Defendants' position is that since each count of the indictment hinges on these allegedly unlawful acts the entire indictment is tainted with the same defect.

■ At the outset it must be borne in mind that "[t]he true test of the sufficiency of an indictment is not whether it could have been made more definite and certain, but whether it contains the elements of the offense intended to be charged, 'and sufficiently apprises the defendant of what he must be prepared to meet, and, in case any other proceedings are taken against him for

a similar offense, whether the record shows with accuracy to what extent he may plea a former acquittal or conviction.' *Cochran and Sayre v. United States,* 157 U.S. 286, 290, [15 S.Ct. 628, 630, 89 L.Ed. 704.]" *Hagner v. United States,* 285 U.S. 427, 431, 52 S.Ct. 417, 419, 76 L.Ed. 861 (1932). Thus, the form of the indictment, to the extent that it defines with adequate specificity, the crime charged may mean the difference between a sufficient and insufficient charge.

Their concern with the factual conduct rather than the language of the indictment underlies defendants' overly broad interpretation of *LaMantia.* The sole issue in that case was whether the term "fictitious sales" had acquired a meaning sufficiently clear to apprise a defendant of the conduct proscribed. The basis of that decision was the court's finding that neither the statute, courts nor the commodities trade itself had a common understanding of the type of conduct at which the statute was directed. Therefore, it was the language of the statute and the indictment rather than any underlying conduct that was deemed relevant.[5]

This indictment not only describes the transactions involved as fixed, rigged, prearranged, non-competitive and risk-free, but also characterizes them as "wash sales". Thus, the issue before this Court is not whether the term "fictitious sales" violates due process notice requirements, but whether the term "wash sale" is a concept that has acquired a commonly understood significance.[6]

---

4. Defendants also argue that, because in the *LaMantia* case, the government took the position that it would be left "without any prohibition against the manipulation of the nation's commodity exchanges for the purpose of fraud . . .", it is now foreclosed from bringing this indictment by the doctrine of judicial estoppel.

The scope of that doctrine is narrow, particularly when applied to the government. *United States v. Gross,* 451 F.2d 1355, 1358 (7th Cir., 1971). Generally, it pertains to statements made under oath in judicial proceedings, and does not apply where the prior statement is merely an expression of opinion or legal conclusion. *United States v. Certain Land and*

*Interests in Property,* 225 F.Supp. 338, 341 (M.D.Tenn., 1964).

5. Significantly, in *LaMantia,* the government brought a superseding indictment charging the defendant with conducting "wash sales". Judge Marshall denied a motion to dismiss.

6. The indictment in Counts IV through XV charges the defendants with engaging in "wash sales" another type of activity specifically made unlawful by the terms of 7 U.S.C. § 6c(a)(A). Those counts have been explicitly incorporated in Count I in which they are defined as overt acts of the conspiracy. The defendants have also moved to dismiss these Counts. Since the Court has found the term

Defendants alternatively argue that like the term "fictitious trades", "wash sales" is illusive and has not been adequately defined.[7] Numerous decisions under the Commodity Exchange Act,[8] however, indicate that at least in the commodities trade, there is a common understanding of the type of transaction that constitutes a "wash sale". *In re Robert E. O'Grady,* 30 A.D. 1635 (1971); *In re Willard E. Platt,* 24 A.D. 97 (1965); *In re Willard E. Platt,* 24 A.D. 93 (1965); *In re Irwin M. Eisen,* 22 A.D. 758 (1963); *Peers and Company,* 13 A.D. 597 (1954). In addition, Congress, in considering the 1974 amendments to the Commodity Exchange Act, included "wash sale" among the terms commonly used in commodity futures trading. S.Rep. No. 93–1131, 93d Cong.2d Sess. Appendix IX, *reprinted in,* [1974] U.S.Code Cong. & Ad.News, pp. 5843, 5894.[9]

In *United States v. National Dairy Products Corp.,* 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963), the Supreme Court held that "[v]oid for vagueness simply means that criminal responsibility should not attach where one could not reasonably understand that his contemplated conduct is proscribed." 372 U.S. at 32–33, 83 S.Ct. at 598. In so doing, the Court cautioned that the sufficiency of the notice must be viewed with an eye to the conduct with which a defendant is charged and the business practices at which the statute was directed. 372 U.S. at 33, 36, 83 S.Ct. 594, 599.

Both of these defendants are floor brokers in the commodity futures market. The administrative decisions provide a consistent definition for the term "wash sale".[10] It is unlikely that the meaning of that term could escape a responsible broker. Moreover, besides the mere charge of conducting "wash sales" Counts IV through XV are embodied in a form which recites in detail the trades that resulted in this indictment. They indicate that the same individuals bought and sold the same futures contracts in the same quantities for the same price. That is traditionally the type of conduct associated with the term "wash sale". *See, e.g., In re Robert E. O'Grady,* 30 A.D. 1635 (1971); *In re Willard E. Platt,* 24 A.D. 97 (1965); *In re Irwin M. Eisen,* 22 A.D. 758 (1963). Therefore, because the indictment charges defendants with engaging in "wash sales" and because that term is defined in the trade in such a manner as to give defendants adequate notice of the proscribed conduct, defendants' motion to dismiss the indictment for being unconstitutionally vague is denied.

Defendants have also moved to dismiss Counts II and III on the ground that a defendant who did not prepare or assist in the preparation of the tax return cannot be convicted for violation of 26 U.S.C. § 7206(2) where neither the taxpayer nor the preparer is aware of false statements in the return. This argument is not supported

---

"wash sale" to have a generally accepted meaning in the trade, the motion to dismiss is denied.

7. Defendants have attached to their reply brief a transcript of a speech made by Richard Fielding, the Chief Counsel to the Division of Trading and Markets, CFTC, in which defendants claim, indicates that no clear definition of that term exists. While there is some confusion about the meaning of "wash sale", the main source of confusion concerns the differences of opinion about its construction in the context of the commodities industry as opposed to its use in the Internal Revenue Code.

8. The Commodity Exchange Act was amended by the Commodity Futures Trading Commission Act of 1974. However, § 6c(a)(A), defin-

ing as unlawful certain types of transactions, including wash sales, was unchanged.

9. A footnote to the Appendix explains that the definitions provided do not purport to be legal definitions of the terms or of binding effect. Nevertheless, their presence in the legislative history, even if only to provide clarification for legislators, indicates that they are terms that are recognized in the trade.

10. Wash sale is defined as a transaction that gives the appearance of being a purchase or sale but which avoids any actual change in ownership. *In re Willard E. Platt,* 24 A.D. 97, 101 (1965); *In re Willard E. Platt,* 24 A.D. 93, 96 (1965); *In re Irwin M. Eisen,* 22 A.D. 758, 760 (1963).

by the terms of § 7206(2) nor judicial interpretation of that statute.[11]

The statute is designed to reach all those who knowingly participate in providing information that results in a materially fraudulent tax return, whether or not the taxpayer is aware of the false statements. *United States v. Jackson,* 452 F.2d 144, 147 (7th Cir., 1971); *United States v. Kelley,* 105 F.2d 912, 917 (2d Cir., 1939). Similarly, the scope of the statute extends to all parties of a scheme which results in the filing of a false return, whether or not those parties actually prepare it. *United States v. Crum,* 529 F.2d 1380, 1382 (9th Cir., 1976); *United States v. Frazier,* 365 F.2d 316, 318 (6th Cir., 1966), *cert. denied,* 386 U.S. 971, 87 S.Ct. 1164, 18 L.Ed.2d 130 (1967).

The indictment, which charges defendants with supplying documents which they knew to contain materially false matters and which they knew would be used in the preparation of an income tax return, contains all the essential elements to charge an offense under § 7206(2). Thus, defendants' claim that this case is unique because neither the taxpayer nor the preparer has been named as a co-conspirator is simply to point out a distinction without a difference.

Therefore, defendants' motion to dismiss Counts II and III is denied.

---

11. Section 7206(2) imposes criminal liability on any person who

> Willfully aids or assists in, or procures, counsels, or advises the preparation or presentation under, or in connection with any matter arising under, the internal revenue laws, of a return, affidavit, claim, or other document,

which is fraudulent or is false as to any material matter, whether or not such falsity or fraud is with the knowledge or consent of the person authorized or required to present such return, affidavit, claim or document . . . .