THOMAS R. JOHNSON, Plaintiff-Appellant, v. WORLD COLOR PRESS, INC., *et al.*, Defendants-Appellees.

· Fifth District   No. 5—85—0607

Opinion filed September 16, 1986.—Rehearing denied October 21, 1986.

David M. Correll and James D. Stout, both of Correll & Stout, of Robinson, for appellant.

Jason M. Rugo, of Gallop, Johnson & Neuman, of St. Louis, Missouri, for appellees.

JUSTICE HARRISON delivered the opinion of the court:

Plaintiff, Thomas R. Johnson, brought an action against defendants, World Color Press, Inc., and City Investing Company, for retaliatory discharge. World Color Press filed a motion to dismiss the complaint for failure to state a cause of action. The circuit court of Effingham County granted this motion, and dismissed the entire cause with prejudice. Plaintiff appeals contending his complaint does state a cause of action for retaliatory discharge and, even if it does not, the court should have allowed him to amend his complaint instead

of dismissing it with prejudice. We reverse and remand.

In his complaint, plaintiff alleged that he was hired in 1974 by World Color Press, Inc., a Delaware corporation with offices in Effingham County, Illinois, to be senior-vice-president and chief financial officer. The complaint alleged that World Color Press is a wholly owned subsidiary of City Investing Company, and that City Investing Company is a publicly owned Delaware corporation. Plaintiff alleges that he was discharged by World Color Press in March of 1982 in retaliation for his opposition to certain accounting practices of the company which he claimed constituted violations of Federal securities laws. He also alleged City Investing Company, the parent corporation, was involved in the decision to fire him. World Color Press filed a motion to dismiss the complaint for failure to state a cause of action. The trial court dismissed the complaint with prejudice on the ground that plaintiff was not a public accountant.

■ No cause of action should be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle plaintiff to recover. (*Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 506, 485 N.E.2d 372, 374, *cert. denied* (1986), 475 U.S. 1122, 90 L. Ed. 2d 187, 106 S. Ct. 1641.) The allegations in the complaint are to be taken as true (108 Ill. 2d 502, 505, 485 N.E.2d 372, 374), and are to be interpreted in the light most favorable to the plaintiff. *Wait v. First Midwest Bank/Danville* (1986), 142 Ill. App. 3d 703, 705, 491 N.E.2d 795, 798.

■ The tort of retaliatory discharge is an exception to the general rule that an at-will employment is terminable at any time for any or no cause. The cause of action for retaliatory discharge is recognized when an employee is discharged in violation of a clearly mandated public policy. (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 130, 421 N.E.2d 876, 878.) While there is no precise definition of the term "clearly mandated public policy," generally "it can be said that public policy concerns what is right and just and what affect the citizens of the State collectively. *** [A] matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed." 85 Ill. 2d 124, 130, 421 N.E.2d 876, 878-79.

Public policy can be found not only in the laws and judicial decisions of Illinois (*Palmateer v. International Harvester Co.* (1981) 85 Ill. 2d 124, 130, 421 N.E.2d 876, 878), but can also be found in Federal law. Our supreme court in *Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 506, 485 N.E.2d 372, 374-75, *cert. denied* (1986), 475 U.S. 1122, 90 L. Ed. 2d 187, 106 S. Ct. 1641, held that a

cause of action for retaliatory discharge could be based upon a clearly mandated public policy which has been declared by Congress and which is national in scope.

In the case *sub judice*, plaintiff alleges that he objected to certain accounting practices which were stated in the complaint as follows:

"A. The treatment of One Million Seven Hundred Fifty Thousand Dollars ($1,750,000.00) in discounts on the purchase of production equipment as income;

B. The treatment of a disputed claim as income in the amount of Six Hundred Twenty-Seven Thousand Dollars ($627,000.00); and

C. The misstatement of accounts concerning an African safari hosted by Clyde Oberlin at company expense, in the aggregate amount of Forty Thousand Dollars ($40,000.00)."

Plaintiff alleges these practices "did not conform with generally accepted accounting principles and that their effect was to overstate the 1981 income of Defendant and to inflate the asset valuation of World Color Press, Inc." He claims these practices were in violation of various provisions of the Federal securities laws.

The Securities Act of 1933 (15 U.S.C.A. sec. 77a *et seq.* (West 1981)) was designed to provide investors with full disclosure of material information concerning public offerings of securities in commerce, to protect investors against fraud, and to promote ethical standards of honesty and fair dealing. The Securities Exchange Act of 1934 (15 U.S.C.A. sec. 78a *et seq.* (West 1981)) was intended principally to protect investors against manipulation of stock prices through regulation of transactions upon securities exchanges and in over-the-counter markets, and to impose regular reporting requirements on companies whose stock is listed on national securities exchanges. (*Ernst & Ernst v. Hochfelder* (1976), 425 U.S. 185, 195, 47 L. Ed. 2d 668, 677-78, 96 S. Ct. 1375, 1382.) Numerous specific requirements of complete, accurate and truthful disclosure are found throughout these two acts, including section 13 of the 1934 Act (15 U.S.C.A. sec. 78m (West 1981)), relied upon by plaintiff in his complaint.

These Federal laws establish a clearly mandated public policy, one which is national in scope. (See *Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 506, 485 N.E.2d 372, 374, *cert. denied* (1986), 475 U.S. 1122, 90 L. Ed. 2d 187, 106 S. Ct. 1641.) We note that the Illinois Securities Law of 1953 (Ill. Rev. Stat. 1985, ch. 121½, par. 137.1 *et seq.*) contains antifraud and full-disclosure provisions which closely parallel the Federal statutes (see particularly sec. 137.12 (Ill. Rev. Stat. 1985, ch. 121½, par. 137.12)), but because plaintiff has not

alleged that the Illinois law should be applied here, we need not rely upon it.

Even though plaintiff does not argue that the Illinois Securities Law applies, he still contends that the public policy found in the Federal law has elsewhere been articulated as the policy of Illinois. In *Ford v. Ford Manufacturing Co.* (1921), 222 Ill. App. 76, 82, the court stated: "A corporation can speak only through its records and the record of its acts must be kept faithfully in order to protect the rights of stockholders and persons doing business with the corporation. Public policy requires that the records shall be kept in such a manner ***." Moreover, corporations face government regulation concerning health and safety, employment, taxation, securities transactions, and other areas of public concern. This regulation in large part must rely upon truthful and accurate record-keeping by businesses.

This public policy of truthful reporting to the government is specifically addressed by a Federal statute. Title 18, section 1001, of the United States Code states:

> "Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000.00 or imprisoned not more than five years, or both." (18 U.S.C.A. sec. 1001 (West 1976).)

This statute, which has been applied to statements made to the Securities and Exchange Commission (*United States v. DiFonzo* (7th Cir. 1979), 603 F.2d 1260, *cert. denied* (1980), 444 U.S. 1018, 62 L. Ed. 2d 648, 100 S. Ct. 672), establishes a clearly mandated public policy against deceptive practices aimed at frustrating or impeding legitimate functions of government departments or agencies. *United States v. Tobon-Builes* (11th Cir. 1983), 706 F.2d 1092, 1101.

■ In summary, we find that public policy favors full disclosure, truthfulness and accuracy in the financial reports made by businesses to the government and to the public, and that an employee who voices objection to practices which he reasonably believes violate this policy should be protected from being discharged as a result of such objection. In *Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 485, N.E.2d 372, *cert. denied* (1986), 475 U.S. 1122, 90 L. Ed. 2d 187, 106 S. Ct. 1641, the plaintiff alleged he was discharged for refusing to work with radioactive materials under conditions which he alleged

were unsafe and which violated Federal regulations. The supreme court found he had stated a cause of action for retaliatory discharge for refusing to work under conditions which contravened the clearly mandated public policy of protecting the lives and property of citizens from the hazards of radioactive material. (108 Ill. 2d 502, 511, 485 N.E.2d 372, 377.) Plaintiff's allegations here are similar to those made in *Wheeler*. Moreover, plaintiff alleges he objected to practices which were not only against public policy, but which he contends were also illegal because this public policy is embodied in part in Federal securities laws which subject those who violate them to civil and criminal liability. Thus, he also invokes the public policy favoring "citizen crime-fighters" found in *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876. The supreme court in *Palmateer* held that a cause of action for retaliatory discharge existed because the plaintiff was discharged for informing a local law-enforcement agency that a co-worker might have committed a criminal violation. The court stated: "There is no public policy more important or more fundamental than the one favoring the effective protection of the lives and property of citizens." 85 Ill. 2d 124, 132, 421 N.E.2d 876, 879.

■ Defendants argue that plaintiff has failed to plead facts which conclusively show a violation of the Federal securities laws. We find plaintiff was not required to so plead. In *Palmateer* the plaintiff alleged he was discharged for notifying local law-enforcement officials that another employee *might* be violating the Illinois criminal code. The court cited its opinion in *Joiner v. Benton Community Bank* (1980), 82 Ill. 2d 40, 44, 411 N.E.2d 229, 231, where it stated that "[p]ersons acting in good faith who have probable cause to believe crimes have been committed should not be deterred from reporting them." The court in *Palmateer* noted that "[a]lthough *Joiner* involved actions for malicious prosecution, the same can be said for the citizen employee who fears discharge. Public policy favors Palmateer's conduct in volunteering information to the law-enforcement agency." (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 133, 421 N.E. 2d 876, 880.) Thus, a plaintiff attempting to state a cause of action for retaliatory discharge after being fired for reporting possible illegal activity need not allege or prove conclusively the law has been violated in order to state a cause of action. Since under *Palmateer* this is the rule when an employee reports to law-enforcement officials, it should certainly also be the rule that an employee with a reasonable belief that illegal activity is occurring should be able to report his belief to his superiors in an effort to ensure management's compliance

with the law without fear of discharge. See *Petrik v. Monarch Printing Corp.* (1982), 111 Ill. App. 3d 502, 508, 444 N.E.2d 588, 592.

It does not matter that the plaintiff in the present case alleged that he only complained to his superiors and not to law-enforcement officials. In *Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 485 N.E.2d 372, *cert. denied* (1986), 475 U.S. 1122, 90 L. Ed. 2d 187, 106 S. Ct. 1641, plaintiff had alleged he was discharged in retaliation for refusing to work in the handling of radioactive material while the operations were being conducted in violation of regulations promulgated by the Nuclear Regulatory Commission. The supreme court stated: "We do not agree with the appellate court that the question whether the facts as alleged involved public policy, or a matter of private concern, is dependent upon whether a complaint was made to the regulatory authorities. The legislation and the regulations declared the public policy, and the existence of that public policy did not depend upon whether plaintiff had communicated a complaint to the Nuclear Regulatory Commission or whether its investigation preceded or followed that complaint." 108 Ill. 2d 502, 509-10, 485 N.E.2d 372, 376. See also *Petrik v. Monarch Printing Corp.* (1982), 111 Ill. App. 3d 502, 507-09, 444 N.E.2d 588, 592.

■■ We next address defendants' argument that the Federal securities laws do not apply to plaintiff's employer, World Color Press, because it is not publicly owned. Plaintiff counters by arguing that improper entries in the financial statements of World Color Press will affect the financial statements of City Investing Company because World Color Press is wholly owned by City Investing and the subsidiary's financial statements are incorporated into those of the parent company. These alleged improper entries, plaintiff argues, could mislead the shareholders of City Investing Company, which is publicly owned, and could mislead the public, whose members are potential investors in City Investing or might otherwise do business with the corporation. While neither party has cited authority on this particular issue, we find it unnecessary to resolve it. Assuming the Federal securities laws do not apply directly to World Color Press, we still find it reasonable for plaintiff to believe that improper entries in the financial statements of World Color Press would be incorporated into and affect the financial statements of City Investing Company to the extent that they might mislead investors and place the parent company in violation of the securities laws. As we have discussed, plaintiff should not be charged with knowing conclusively whether the securities laws have been violated, but rather an allegation that he reasonably believed the complained-of practices might be illegal was

sufficient.

Defendants also argue that the allegations in plaintiff's complaint amount to mere internal accounting disputes and not to illegal misstatements of financial data. Recently, the First District decided the case of *Petrik v. Monarch Printing Corp.* (1986), 143 Ill. App. 3d 1, 493 N.E.2d 616 (which we shall call *Petrik II*), where the court held: "An internal dispute over which of two accounting methods is to be chosen by a closely held corporation, either of which is proper, and a fight over the calculation of the bonus to be paid to the corporation's former owner, cannot be said to be the type of dispute that affects the citizens of the State collectively." (143 Ill. App. 3d 1, 10, 493 N.E.2d 616, 623.) In an earlier decision in the same case (*Petrik v. Monarch Printing Corp.* (1982), 111 Ill. App. 3d 502, 444 N.E.2d 588 (which we shall call *Petrik I*)), the appellate court found the plaintiff had stated a cause of action for retaliatory discharge because he had alleged that he had discovered a discrepancy in the corporation's financial records which he believed *may* have been due to criminal conduct. After remand, the trial court granted the defendant's motion for summary judgment and the First District in *Petrik II* affirmed for the reason quoted above.

The case *sub judice* can be distinguished from *Petrik II*. Plaintiff here specifically alleges the misstatement of an account concerning the expense of an African safari. While the two other specific accounting procedures found in the complaint do not refer to misstatements of accounts, plaintiff does allege that all of the practices complained of did not conform with generally accepting accounting principles and that their effect was to overstate income and assets. In an effort to explain his concern over these accounting procedures, plaintiff cites to section 210.4—01(a)(1) of title 17 of the Code of Federal Regulations, which states:

"Financial statements filed with the Commission which are not prepared in accordance with generally accepted accounting principles will be presumed to be misleading or inaccurate, despite footnote or other disclosures, unless the Commission has otherwise provided." (17 C.F.R. sec. 210.4—01(a)(1) (1985).)

In *Petrik II* the court found the plaintiff had complained of an internal dispute over two accounting methods, either of which was proper. Furthermore, the court in *Petrik II* stated: "This is not a case in which a bookkeeper was fired for refusing to make false bookkeeping entries" (143 Ill. App. 3d 1, 8, 493 N.E.2d 616, 622), implying that its result would have been different had it been faced with such a case. We find ourselves faced with such a case, as plaintiff has alleged he

objected to bookkeeping entries which overstated income and assets. We also note that the decision in *Petrik II* addressed an appeal from summary judgment, while we are faced with an appeal from the granting of a motion to dismiss, as was the court in *Petrik I* when it found a cause of action for retaliatory discharge had been stated.

We cannot say that it clearly appears no set of facts can be proved which will entitle plaintiff to recover. (See *Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 506, 485 N.E.2d 372, 374, *cert. denied* (1986), 475 U.S. 1122, 90 L. Ed. 2d 187, 106 S. Ct. 1641.) We find, rather, that plaintiff has stated a cause of action for retaliatory discharge. He alleges he was discharged in retaliation for his activities, and that the discharge was in violation of a clearly mandated policy. We have found public policy favors, and in certain instances statutes require, full disclosure, truthfulness, and accuracy in financial reports made by businesses to the government and to the public. Public policy favors employees attempting to ensure management's compliance with the requirements of the law and public policy. (See *Petrik v. Monarch Printing Corp.* (1982), 111 Ill. App. 3d 502, 508, 444 N.E.2d 588, 592, (*Petrik I*). If we accept as true plaintiff's allegations, as we must, his discharge violated these public policies.

■ Finally, we address the argument by defendants that for policy reasons we should not recognize the cause of action for retaliatory discharge in the present case. Defendants argue that the tort of retaliatory discharge is designed to protect low-level employees and not high-level managers such as plaintiff. Defendants assert that consensus is essential at the top levels of management, and that when senior managers disagree over such things as accounting procedures, the interests of the employer outweigh the interests of the employee. We have found no Illinois decisions on retaliatory discharge which specifically address the type of position from which an employee is fired as a relevant factor in whether a cause of action has been stated. However, in *Palmateer*, the supreme court found that a plaintiff discharged from a managerial position had stated a cause of action for retaliatory discharge and expressly rejected the defendant's argument that "it ought to be able to properly fire a managerial employee who recklessly and precipitously resorts to the criminal justice system to handle such a personnel problem." (*Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 133, 421 N.E.2d 876, 880. See also *Petrik v. Monarch Printing Corp.* (1982), 111 Ill. App. 3d 502, 444 N.E.2d 588 (*Petrik I*) and *Petrik v. Monarch Printing Corp.* (1986), 143 Ill. App. 3d 1, 493 N.E.2d 616 (*Petrik II*) (which involved a senior vice-president, where the court assumed without discussion that he

could recover under retaliatory discharge under proper circumstances).) We decline defendants' invitation to create a class of employees who are excluded from recovering under retaliatory discharge.

Defendants also cite *Barr v. Kelso-Burnett* (1985), 106 Ill. 2d 520, 525, 478 N.E.2d 1354, 1356, to argue for a narrow interpretation of the tort of retaliatory discharge. We acknowledge that the tort of retaliatory discharge is an exception to the general rule of at-will employment, but it is also true the law will recognize a cause of action where, as here, it is alleged a plaintiff has been discharged in violation of public policy. See *Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 485 N.E.2d 372, *cert. denied* (1986), 475 U.S. 1122, 90 L. Ed. 2d 187, 106 S. Ct. 1641.

For the foregoing reasons, the judgment of the circuit court of Effingham County is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

WELCH and KARNS, JJ., concur.