STEVEN B. RUSS, Plaintiff-Appellant, v. PENSION CONSULTANTS COMPANY, INC., Defendant-Appellee.

First District (2nd Division)   No. 1—88—0330

Opinion filed April 25, 1989.

---

*Justice Egan participated in the decision of this case prior to his assignment to the sixth division.

Ernest T. Rossiello, of Chicago, for appellant.

Sachnoff, Weaver & Rubenstein, Ltd., of Chicago (Charles R. Watkins and Judi A. Lamble, of counsel), for appellee.

JUSTICE EGAN* delivered the opinion of the court:

The plaintiff, Steven B. Russ, appeals from orders of the circuit court of Cook County granting the defendant's motion to dismiss the

---

*Justice Egan participated in the decision of this case prior to his assignment to the sixth division.

first amended complaint with prejudice and denying the plaintiff leave to file a second amended complaint on the ground that neither stated a cause of action for retaliatory discharge of an at-will employee.

In his first amended complaint the plaintiff alleged that he was an expert in the composition, structuring and interpretation of pension and employee benefit plans and he was hired on or about June 12, 1984, by the defendant Pension Consultants Company, Inc. (PCC), as an actuary and vice-president. On or about April 9, 1985, an agent of the defendant asked the plaintiff to create pension plans for two PCC clients and backdate them to an effective date of January 1, 1984, so that the plans could take advantage of the tax deductions for the calendar year 1984. Such deductions would have been illegal under section 401(b) of the Internal Revenue Code (Code) (26 U.S.C. §401(b) (1985)) and its accompanying regulation, regulation 1.401(b)—1 (Treas. Reg. §1.401(b)—1, *reprinted in* 26 C.F.R. §1—401(b)—1 (1988)) and under sections 102, 402(b) and 403(a)[1] of the Code (26 U.S.C. §§102, 402(b), 403(a) (1985)), since the pension plan was not actually in existence during the tax year for which the deduction was sought.

The amended complaint further alleged that the plaintiff informed the defendant that he would not backdate the plans because, "according to his knowledge and belief," a pension plan must be in existence by the end of the tax year during which any deductions are taken by the holder of the plan. "In retaliation for [the] plaintiff refusing to violate the federal laws," on a date not alleged, the defendant discharged the plaintiff from his employment.

The allegations in the second amended complaint differ somewhat. Rather than alleging that he was asked to "establish" pension plans for two PCC clients and "backdate" those plans to January 1, 1984, the plaintiff avers only that he was asked to perform certain unspecified actuarial calculations which would be used by the defendant to establish the plans. The plaintiff claims that such conduct would violate a different set of statutes and regulations than alleged in the first amended complaint. In the second amended complaint, the plaintiff relies upon 18 U.S.C. §1027 (18 U.S.C. §1027 (1982)), and Internal Revenue Service rulings 81—114 (Rev. Rul. 81—114, 1981—1 C.B. 207) and 76—28 (Rev. Rul. 76—28, 1976—1 C.B. 106), which regulate the deductibility of employer contributions to qualified pension plans under section 404(a)(6) of the Internal Revenue Code (26 U.S.C.

---

[1]The complaint itself refers to 29 U.S.C. §§102, 402(b) and 403(a). This would appear to be an error. Title 29 relates to labor laws. It appears that the plaintiff intended to cite to provisions of the Internal Revenue Code, which is Title 26.

§404(a)(6) (1985)).

After the defendant moved to dismiss the original complaint, the parties entered an agreed order granting the defendant's motion and giving the plaintiff leave to file an amended complaint. The defendant then moved to dismiss the amended complaint and filed a memorandum in support. Although neither the motion nor the memorandum indicated under which section of the Code of Civil Procedure the defendant was moving, the parties agree that the defendant was asserting that the plaintiff had not pleaded a cause of action, which would be a section 2—615 motion. Ill. Rev. Stat. 1985, ch. 110, par. 2—615.

After the motion had been briefed and argued and the court took the matter under advisement, the plaintiff filed a motion for leave to file a second amended complaint, which the plaintiff asserted remedied the defendant's objections to the first amended complaint. A copy of the proposed complaint was attached. A few days thereafter, the court granted the defendant's motion to dismiss with prejudice. The order entered by the court was drafted by the defendant's counsel and apparently submitted to the court at an earlier date; it refers only to the amended complaint and makes no mention of the proposed second amended complaint.

Within 30 days of the court's ruling, the plaintiff filed a "Motion to Vacate, to Reconsider and for Leave to File Second Amended Complaint Instanter." The plaintiff asked the court to vacate the order dismissing the first amended complaint and to grant leave to file the second amended complaint or, in the alternative, "[t]o grant leave to the plaintiff to file the second amended complaint and making final and appealable the dismissal of the second amended complaint, in lieu of the amended complaint, for whatever reasons the trial court may believe warrant said dismissal." Before the court could rule on this motion, the plaintiff filed a "Motion for Clarification" of the dismissal order, asking the court to state whether it considered the proposed second amended complaint and 18 U.S.C. §1027 when it ruled that the amended complaint failed to state a cause of action. The trial court denied the motion for clarification on the basis that the order dismissing the amended complaint was clear and also denied the motion to vacate and for leave to file the second amended complaint. The court denied leave to file apparently on the ground that it had previously dismissed the amended complaint with prejudice.

■ The defendant first argues that the plaintiff's tendering of the second amended complaint estops him from asserting the adequacy of the amended complaint. The defendant's argument would be tenable, if the trial court had allowed the motion for leave to amend and then

dismissed the second amended complaint, since, by pleading over, the plaintiff would have waived any objection to the court's dismissal of the amended complaint. (*Adamcyzk v. Forest Preserve District* (1986), 151 Ill. App. 3d 320, 323, 502 N.E.2d 1197, 1199; *Robins v. Lasky* (1984), 123 Ill. App. 3d 194, 198, 462 N.E.2d 774, 777.) However, since the court did not grant leave to file the second amended complaint, the plaintiff may properly seek review of the order dismissing the amended complaint as well as the order denying him leave to file the second amended complaint; and the adequacy of both complaints is properly before this court.

In order to maintain an action for retaliatory discharge, the plaintiff must allege: (1) that he was discharged; (2) in retaliation for his activities; and (3) the discharge violates a clear mandate of public policy. *Hinthorn v. Roland's of Bloomington, Inc.* (1988), 119 Ill. 2d 526, 529, 519 N.E.2d 909, 911.

Because the judgment below was entered upon allowance of the defendant's motion to dismiss, all properly alleged facts in the complaint must be taken as true. (*Fitzgerald v. Chicago Title & Trust Co.* (1978), 72 Ill. 2d 179, 187, 380 N.E.2d 790, 794.) A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle the plaintiff to recover. *Fechtner v. Lake County Savings & Loan Association* (1977), 66 Ill. 2d 128, 133, 361 N.E.2d 575, 578.

Prior to 1978, Illinois adhered to the rule that an at-will employment relationship, such as existed between the plaintiff and defendant here, could be terminated by either party at any time, with or without cause. Beginning with *Kelsay v. Motorola, Inc.* (1978), 74 Ill. 2d 172, 384 N.E.2d 353, Illinois recognized the tort of retaliatory discharge as an exception to the employment-at-will doctrine. In *Kelsay*, the supreme court held that an employer violated the public policy embodied in the Illinois Workers' Compensation Act by discharging an employee for bringing a worker's compensation claim.

Since *Kelsay*, several courts have attempted to define the scope of the doctrine. (See, *e.g., Hinthorn*, 119 Ill. 2d 526, 519 N.E.2d 909; *Wheeler v. Caterpillar Tractor Co.* (1985), 108 Ill. 2d 502, 485 N.E.2d 372, *cert. denied* (1986), 475 U.S. 1122, 90 L. Ed. 2d 187, 106 S. Ct. 1641; *Barr v. Kelso-Burnett Co.* (1985), 106 Ill. 2d 520, 478 N.E.2d 1354; *Palmateer v. International Harvester Co.* (1981), 85 Ill. 2d 124, 421 N.E.2d 876; *Petrik v. Monarch Printing Corp.* (1982), 111 Ill. App. 3d 502, 444 N.E.2d 588 (*Petrik I*), *appeal after remand* (1986), 143 Ill. App. 3d 1, 493 N.E.2d 616 (*Petrik II*).) Much of the discussion has been focused on defining what constitutes a "clear man-

date of public policy." The supreme court, in *Palmateer* (85 Ill. 2d at 130, 421 N.E.2d at 878-89), commented:

"There is no precise definition of the term. In general, it can be said that public policy concerns what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions. (*Smith v. Board of Education* (1950), 405 Ill. 143, 147.) Although there is no precise line of demarcation dividing matters that are the subject of public policies from matters purely personal, a survey of cases in other States involving retaliatory discharges shows that a matter must strike at the heart of a citizen's social rights, duties, and responsibilities before the tort will be allowed."

Thus far, Illinois has found a clear mandate of public policy in only two situations: (1) where the discharge stems from the employee asserting a worker's compensation claim or (2) where the discharge is for what some cases and commentators refer to generally as "whistle-blowing," that is, refusing to engage in illegal conduct and/or reporting the illegal conduct of others. (*Abrams v. Echlin Corp.* (1988), 174 Ill. App. 3d 434, 443, 528 N.E.2d 429, 435.) The "whistle-blowing" class of cases includes situations where an employee is dismissed for reporting that illegal or wrongful activities have been engaged in by a fellow employee or employer (*Palmateer*, 85 Ill. 2d 124, 421 N.E.2d 876; *Petrik*, 111 Ill. App. 3d 502, 444 N.E.2d 588), as well as where the employee himself refuses to perform an illegal or wrongful act (*Wheeler*, 108 Ill. 2d 502, 485 N.E.2d 372).

The amended complaint alleges that the plaintiff was discharged not for reporting illegal or wrongful activities, but for refusing to engage in them himself. The plaintiff alleged that he was ordered to create and backdate pension plans, structuring them with an effective date of January of the previous year in order to secure certain tax benefits. The plaintiff does not explain why such activity would be illegal but instead simply points to section 401(b) of the Internal Revenue Code and its accompanying regulation, regulation 1.401(b)—1, and sections 102, 402(b) and 403(a) of the Code.

The supreme court has held that public policy may be found in Federal law. (*Wheeler*, 108 Ill. 2d at 511, 485 N.E.2d at 377.) However, sections 102, 402(b) and 403(a) do not contain any declaration of public policy relevant here. They do not appear to govern, much less prohibit, the activity to which the plaintiff refers. Thus, the only potentially relevant statute is section 401(b) and regulation 1.401(b)—1. As the defendant notes, these provisions do allow some retroactive changes

by the employer in regard to these pension plans. But, as the defendant also acknowledges, regulation 1.401(b)—1 imposes the restriction that such pension plans "can not be created out of whole cloth in one taxable year and then backdated to the previous taxable year."

In order to allege a clearly mandated public policy, the law "must strike at the heart of a citizen's social rights, duties, and responsibilities" (*Palmateer*, 85 Ill. 2d at 130, 421 N.E.2d at 878-89) and not merely involve a purely "private and individual grievance" created by private contract (*Price v. Carmack Datsun, Inc.* (1985), 109 Ill. 2d 65, 69, 485 N.E.2d 359, 361). Although the amended complaint does not specifically allege how section 401(b) and regulation 1.401(b)—1, which by their terms appear directed to the taxpayer, also apply to the plaintiff and his employer, compliance with the terms of the Internal Revenue Code and its regulations does strike at the heart of the plaintiff's social duties and responsibilities. As the court stated in *Johnson v. World Color Press, Inc.* (1986), 147 Ill. App. 3d 746, 754, 498 N.E.2d 575, 580:

> "We have found public policy favors, and in certain instances statutes require, full disclosure, truthfulness, and accuracy in financial reports made by businesses to the government and to the public. Public policy favors employees attempting to ensure management's compliance with the requirements of the law and public policy."

The defendant now cites a case decided on the same day that this case was argued in this court. In *Naqvi v. Oudensha America, Inc.* (N.D. Ill. 1988), 702 F. Supp. 671, the district court decided that compliance with Federal laws requiring the payment of Federal income taxes does not amount to clearly mandated public policy for Illinois citizens because (1) enforcement does not have a "direct and substantial" effect on the citizens of Illinois; (2) Illinois citizens do not require protection from Federal tax evaders in order to remain safe and healthy; and (3) Illinois has little interest in enforcing the Internal Revenue Code. In so holding, the court dismissed a complaint alleging retaliatory discharge.

We observe first that decisions of Federal district and appellate courts construing State laws are not binding on Illinois courts. (*Kelsay*, 74 Ill. 2d at 182, 384 N.E.2d at 357; *The Ray Schools-Chicago-Inc. v. Cummins* (1957), 12 Ill. 2d 376, 381, 146 N.E.2d 42, 45.) Second, we must express respectful disagreement with the district court. We believe that an Illinois citizen's obedience to the law, including Federal law, is a clearly mandated public policy of this State under the principles enunciated in *Wheeler* (108 Ill. 2d 502, 485 N.E.2d 372). In

addition, Illinois has an interest in the enforcement of the Federal tax laws because falsification of Federal tax records could also mean the falsification of State tax records, since the legislature has adopted the Federal taxable income as the starting point for calculating the State corporate income tax. (Ill. Rev. Stat. 1985, ch. 120, par. 4—403; *Bodine Electric Co. v. Allphin* (1979), 70 Ill. App. 3d 844, 847-48, 389 N.E.2d 168, 171-72, *aff'd* (1980), 81 Ill. 2d 502, 410 N.E.2d 828.) Therefore, the underpayment of Federal income taxes could result in the underpayment of State taxes.

A view contrary to that of the district court in *Naqvi* was expressed by another Federal district court in *Adler v. American Standard Corp.* (D. Md. 1982), 538 F. Supp. 572, 580, *aff'd in part & rev'd in part* (4th Cir. 1987), 830 F.2d 1303, in which the district court stated:

> "In short, the interlocking and pervasive requirements of business taxation and record-keeping indicate that, when bribes of the sort alleged are paid, violations of the above-mentioned federal statutes will result. And since Maryland tax law and Maryland tax returns are based, in large part, on federal tax law and federal tax returns, Maryland is directly affected if federal taxes are evaded."

■ Neither *Naqvi* nor the Illinois Appellate Court case upon which it relies, *Pratt v. Caterpillar Tractor Co.* (1986), 149 Ill. App. 3d 588, 500 N.E.2d 1001, referred to *Johnson v. World Color Press, Inc.* (1986), 147 Ill. App. 3d 746, 498 N.E.2d 575, in which the court, relying on *Wheeler*, held that Federal securities statutes which were national in scope established a clearly mandated public policy of this State and supported a cause of action on behalf of an employee discharged allegedly for refusing to violate those statutes. Therefore, the amended complaint does allege a clearly mandated public policy.

■ The defendant also contends that the amended complaint does not contain sufficient factual allegations that the discharge was in retaliation for certain protected activities. This element basically requires that the plaintiff allege a causal relationship between his activities and the discharge. *Hinthorn*, 119 Ill. 2d at 532, 519 N.E.2d at 912.

■ We disagree with the defendant's contention that the plaintiff has not pleaded sufficient facts to apprise the defendant that it was being charged with firing the plaintiff for refusing to engage in illegal conduct. The plaintiff has pleaded the ultimate facts that the backdating of the plan (or plans) was a violation of Federal law; that he informed the defendant that he would not backdate the plans because to do so would be illegal under the Federal laws; and that the defendant

discharged him in retaliation for refusing to violate the Federal laws. These are sufficient allegations which the motion to dismiss accepts as true. While the allegations lack the specificity present in other cases, such as *Petrik I* (111 Ill. App. 3d at 503, 444 N.E.2d at 589) and *Johnson* (147 Ill. App. 3d at 749, 498 N.E.2d at 577), they reasonably inform the defendant that the plaintiff claims he was discharged in retaliation for refusing to perform certain acts. As the supreme court has held, the complaint need not explicitly delineate the conduct on the part of the defendant which led to the discharge, so long as it spells out the course of events which did so. (*Hinthorn*, 119 Ill. 2d at 532, 519 N.E.2d at 912.) Whether the alleged backdating here was, in fact, legal, as the defendant argues, cannot be resolved in the present posture of the case. If the evidence supports the defendant's position, then summary judgment may be appropriate. (*Petrik*, 143 Ill. App. 3d at 6-10, 493 N.E.2d at 620-23.) The amended complaint does inform the defendant of the crux of the claim (*Hinthorn*, 119 Ill. 2d at 532, 519 N.E.2d at 912) and sufficiently alleges a cause of action. Therefore, the trial court incorrectly granted the defendant's motion to dismiss the amended complaint.

The plaintiff also argues that the court abused its discretion in denying him leave to file the second amended complaint. A reviewing court will not reverse the denial of leave to amend unless it is an abuse of discretion (*Talas v. Youngstown Sheet & Tube Co.* (1985), 134 Ill. App. 3d 103, 107, 479 N.E.2d 1052, 1055.) Among the factors this court must consider in determining whether discretion was properly exercised is whether the proposed amendment could cure the defective pleading; whether it could cause prejudice or surprise to other parties; the timeliness of the proposed amendment; and whether previous opportunities to amend the pleadings could be identified.

In the second amended complaint, the plaintiff cites to 18 U.S.C. §1027 and IRS revenue rulings 81—114 and 76—28, which regulate the deductibility of employer contributions to qualified pension plans under 26 U.S.C. §404(a)(6). The two revenue rulings make it unlawful for an employer to deduct its contributions to the pension plan unless the plan was actually in existence during the tax year. They state that contributions may be made at the close of a taxable year but further provide that the new rules do not, however, "change the requirement that a plan must be in existence as of the last day of the employer's taxable year with respect to which a contribution is made." Therefore, in order to lawfully obtain the tax deduction, the pension plan must have been in existence no later than December 31, 1984. These two rulings embody the same clearly mandated public policy expressed in section

401(b) of the Code and regulation 1.401(b)—1.[2]

18 U.S.C. §1027 imposes criminal penalties upon a person who "knowingly conceals, covers up or fails to disclose any fact the disclosure of which is required *** or is necessary to verify, explain, clarify or check for accuracy and completeness any report required by [the Employee Retirement Income Security Act (ERISA)]". (18 U.S.C. §1027 (1982).) Although the plaintiff here has not alleged that the pension plans to which he refers were ERISA plans or that the documents he was called upon to prepare were integral to the plan, the necessary elements for prosecution under section 1027 (*United States v. Martorano* (E.D. Penn. 1984), 596 F. Supp. 621, 624-25, *aff'd* (3rd Cir. 1985), 767 F.2d 63, *cert. denied* (1985), 474 U.S. 949, 88 L. Ed. 2d 296, 106 S. Ct. 348),[3] such may be inferred from the second amended complaint. Therefore, section 1027 also constitutes a clearly mandated public policy which was violated when the plaintiff was discharged for refusing to disobey its provisions.[4]

■ Contrary to the defendant's assertions, the plaintiff has ade-

---

[2]Despite the apparent applicability of section 401(b) and regulation 1.401(b)—1, the plaintiff does not allege them in his second amended complaint.

[3]"Four essential elements must be proved beyond a reasonable doubt before a defendant may be found guilty under 18 U.S.C. §1027: (1) that the defendant made a false statement or representation of fact, or concealed, covered-up or failed to disclose a fact; (2) that the defendant did so knowingly; (3) that the false statement or representation of fact was made in a document required by Title I of ERISA to be published, or kept as part of the records of any employee welfare benefit plan, or certified to the administrator of any such plan, and any concealment, cover-up, or failure to disclose was of a fact the disclosure of which is required by Title I or is necessary to verify, explain, or check for accuracy and completeness any information required by such title to be published or certified; and (4) that the employee welfare benefit plan in question was an employee welfare benefit plan within the meaning of and subject to Title I of ERISA." *United States v. Martorano*, 596 F. Supp. at 624-25.

[4]Moreover, the plaintiff also could have alleged that had he complied with his instructions and prepared the actuarial figures, he would be subject to prosecution under section 7206(2) of the Internal Revenue Code (26 U.S.C. §7206(2) (1982)), which imposes criminal liability on any person who aids or abets in the preparation of a knowingly false or fraudulent income tax return or related document. The backdating of documents for the fraudulent purpose of obtaining a deduction constitutes an offense. (*United States v. Crum* (9th Cir. 1976), 529 F.2d 1380, 1382-83.) In order to prove a violation of section 7206(2), the government need only establish that either the information was supplied with the intent to deceive or that the information was false in the sense of being fraudulent. (*United States v. McGee* (5th Cir. 1978), 572 F.2d 1097, 1099.) Prosecution under the statute is not limited to those who actually prepare the return but to all those who knowingly participate in providing information that results in a materially fraudulent tax return. *Crum*, 529 F.2d at 1382; *United States v. Siegel* (N.D. Ill. 1979), 472 F. Supp. 440, 444.

quately alleged the element of retaliation even though he no longer alleges that he was ordered to "establish" and "backdate" two pension plans but only that he was asked to make "certain actuarial calculations to be used by the defendant to establish" a pension plan which he "had reasonable grounds to believe" would be used to form the two plans to be established and structured with the January 1, 1984, effective date. A fair reading of the second amended complaint reasonably informs the defendant that the plaintiff alleges that he was discharged in retaliation for refusing to perform certain actions which he avers would lead to the establishment of an illegal pension plan or plans.

We repeat that, while the evidence may show that the actions requested of the plaintiff were lawful, the plaintiff has made well-pleaded allegations to the contrary, and this dispute cannot be resolved on a motion to dismiss. Therefore, the second amended complaint adequately alleges a cause of action for retaliatory discharge, and the circuit court's denial of leave to file the second amended complaint was error.

In reversing the trial court we do not sanction the lackadaisical approach taken by the plaintiff in prosecuting his case and responding to the defendant's motions. We observe that the complaints were not models of draftsmanship, even though there are several appellate and supreme court cases discussing the elements of the cause of action and setting forth portions of the well-pleaded complaints (*e.g.*, *Hinthorn*, *Petrik I* and *Johnson*). We note further that the plaintiff did not cite to any Illinois retaliatory discharge cases in the trial court.

Accordingly, for the reasons expressed, we reverse the order of the circuit court and remand for further proceedings consistent with this opinion.

Reversed and remanded.

BILANDIC, P.J., and HARTMAN, J., concur.