**Paul M. LORENZ, Plaintiff–Appellant
and Cross–Appellee,**

**v.**

**MARTIN MARIETTA CORPORATION,
INC., Defendant–Appellee and
Cross–Appellant.**

**No. 86CA1603.**

Colorado Court of Appeals,
Div. V.

July 26, 1990.

Rehearing Denied Aug. 23, 1990.

Certiorari Granted Jan. 7, 1991.

Miller & McCarren, P.C., John J. McHale, Jr., Denver, for plaintiff-appellant and cross-appellee.

Holme, Roberts & Owen, John R. Webb, Katherine J. Peck, Susan Begesse Prose, Denver, for defendant-appellee and cross-appellant.

Opinion by Judge DUBOFSKY.

In this action premised on the allegation by plaintiff, Paul M. Lorenz, of wrongful discharge from employment, the trial court, at the end of plaintiff's evidence, granted the motion for dismissal and for a directed verdict by defendant, Martin Marietta Corporation, Inc. Plaintiff appeals and defendant cross-appeals the trial court's ruling as to the award of costs. We reverse.

Plaintiff is a specialist in mechanical engineering and was initially employed by defendant in its research and development department utilizing his specialty in fracture mechanics. He was employed as an at-will employee from 1972 to 1975. Plaintiff was considered a "principal investigator" whose responsibility was quality control for work contracted for by the National Aeronautics and Space Administration (NASA).

Plaintiff presented evidence at trial which indicated that, on a number of occasions, he objected to defendant's work as being of inferior quality. Contrary to defendant's request, plaintiff refused to provide NASA with misleading and erroneous information. In a design review meeting held in 1973, plaintiff complained that a proposed testing sequence for a project was inadequate. Additionally, plaintiff allegedly complained to his supervisor that a contract bid proposed to NASA included unrealistic costs assessments resulting in a false contract price.

Plaintiff, in his capacity as "principal investigator," was responsible for quality control in the production of a testing machine, the "biaxial test fixture," which measured complex stresses in metals to be used in the external tanks of the NASA space shuttles. Plaintiff found the testing machine to be deficient and unable to perform its work properly.

A technical review session was held at defendant's offices in July 1974, regarding one of the defendant's projects for NASA. Plaintiff prepared the minutes of the meeting and distributed them to the participants. Plaintiff claims he was directed by a superior to make modifications in the minutes which did not accurately reflect the events of the meeting. Plaintiff maintains he refused to do so.

On a separate occasion, plaintiff claims he was pressured by a superior to attest to the adequacy of a proposed selection of material for another NASA project, a space vehicle known as the "TUG." Plaintiff maintains he refused to write the final report to NASA on the project because of inadequate testing of the materials.

Plaintiff was notified on July 22, 1975, that he would be laid off, and his last day working for defendant was July 25, 1975. Plaintiff filed his complaint initiating this action on July 24, 1981.

The trial court held in abeyance, until after the presentation of plaintiff's evidence, defendant's motions to dismiss the case based on failure to state a claim upon which relief can be granted and the expiration of the pertinent statute of limitations period. After hearing plaintiff's evidence, the trial court granted defendant's motions based upon its conclusion that the statute of limitations barred plaintiff's claim and that Colorado law did not recognize a cause of action for wrongful termination premised on a "whistle blowing" theory.

## I.

Plaintiff argues that the trial court erred in granting defendant's motion for directed verdict on the ground that his complaint was filed after the statute of limitations had expired. We agree.

When passing upon a motion for a directed verdict, the trial court must view the evidence in a light most favorable to the party against whom the motion is directed. C.R.C.P. 50; *Jasko v. F.W. Woolworth Co.*, 177 Colo. 418, 494 P.2d 839 (1972).

A claim for relief based upon the public policy exception to the at-will termination rule sounds in tort. *See Sussman v. University of Colorado Health Sciences Center*, 706 P.2d 443 (Colo.App.1985); *Lampe v. Presbyterian Medical Center*, 41 Colo.App. 465, 590 P.2d 513 (1978).

Plaintiff contends that the six-year statute of limitations, in effect at times pertinent here, *see* § 13–80–110, C.R.S., commenced to run on July 26, 1975, the day after he was terminated by defendant. Defendant argues that the six-year statute of limitations commenced on July 22, 1975, when plaintiff was notified of the termination.

To support its position that the statute of limitations runs from the date of notification, defendant relies primarily on *Quicker v. Colorado Civil Rights Commission*, 747 P.2d 682 (Colo.App.1987). The *Quicker* holding, however, interprets a different statute than the one at issue here and the difference between the language of the two statutes requires a different result.

The statute in *Quicker*, § 24–34–403, C.R.S. (1988 Repl.Vol. 10A), states that:

"Any charge ... shall be filed ... within six months after the alleged discriminatory or unfair employment *practice occurred*." (emphasis added)

*Quicker* follows those federal cases which conclude that the discriminatory or unfair employment practice occurred when the employer gave notice.

This claim for wrongful discharge is based on the employer's tortious misconduct. The applicable statute of limitations, § 13–80–110 C.R.S., states that such an action shall be commenced within six years after the action *accrues*. The statute of limitations for a tort action does not begin to run until there has been an *injury*.

*Lyons v. Nasby,* 770 P.2d 1250 (Colo.1989); *Jenkins v. Wine & Dine Inc.,* 784 P.2d 854 (Colo.App.1989). *See* W. Prosser, *Torts* § 30 (5th ed. 1984).

As the North Carolina Court of Appeals stated in *Bolick v. American Barmag Corp.,* 54 N.C.App. 589, 284 S.E.2d 188 (1981):

"The negligence of a defendant confers no right of action upon a plaintiff until the plaintiff suffers an injury proximately caused thereby.... [T]he claims of persons injured ... cannot accrue until the injury, death, or property damage occurs."

Similarly, in a wrongful termination case, the injury is the loss of the employee's job. Thus, the statute of limitations does not begin to run until the job is lost. Accordingly, because the cause of action did not accrue until the plaintiff suffered the injury of losing his job, the trial court erred in granting the defendant's motion.

## II.

Plaintiff next argues that the trial court erred in dismissing his case on the basis that plaintiff had not established a prima facie claim of retaliatory discharge pursuant to the public policy exception to the at-will employment rule. We agree.

■ To prevail on the public policy exception to the at-will employment rule, plaintiff is required to prove: (1) that he refused to perform an action, (2) ordered by his employer, (3) which would violate a specific statute, (4) whose terms are more than a broad, general statement of policy, and (5) that his termination resulted from his refusal. *Cronk v. Intermountain Rural Electric Ass'n,* 765 P.2d 619 (Colo.App. 1988).

Defendant, focusing its attack upon the fourth *Cronk* element of the claim, first argues that the statute relied upon by plaintiff is a broad statement of policy and is not sufficiently specific to sustain the claim. We disagree.

■ We conclude that 18 U.S.C. § 1001 (1982) meets the *Cronk* criteria and that, therefore, plaintiff met this requirement

for a wrongful discharge claim. That statute states:

"Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statement or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

Several federal courts have determined that 18 U.S.C. § 1001 (1982) is sufficiently definite to survive a constitutional claim that it is void for vagueness. *See, e.g., United States v. Matanky,* 482 F.2d 1319 (9th Cir.1973), *cert. denied,* 414 U.S. 1039, 94 S.Ct. 539, 38 L.Ed.2d 329 (1973).

Fraud statutes often contain language such as that found in 18 U.S.C. § 1001 (1982). *See, e.g.,* § 8–81–101, C.R.S. (1986 Repl.Vol. 3B). Courts have generally found statutes which prohibit "fraudulent activity" to be sufficiently specific to meet the requirements of the public policy exceptions to the at-will termination rule and, thus, to provide a basis for a wrongful discharge claim. *See Johnson v. World Color Press Inc.,* 147 Ill.App.3d 746, 101 Ill.Dec. 251, 498 N.E.2d 575 (1986); *Trombetta v. Detroit Toledo & Ironton R. Co.,* 81 Mich.App. 489, 265 N.W.2d 385 (1978). Moreover, the language of 18 U.S.C. § 1001 (1982) is more specific than the statute implicitly found acceptable in *Cronk v. Intermountain Rural Electric Ass'n, supra.*

Thus, we conclude that 18 U.S.C. § 1001 (1982) is sufficiently specific to support a claim for wrongful termination.

■ Plaintiff's evidence, if accepted, indicates that he was directed to file a report and transmit minutes of a meeting to NASA officials containing false and misleading statements regarding defendant's work. This evidence further indicates that when he refused to do so he was fired.

Accordingly, it was sufficient to constitute a prima facie claim of retaliatory discharge.

### III.

■ Defendant, however, argues the *Cronk* decision should not be given retroactive effect. In addition, defendant implicitly argues that, in 1975, Colorado courts, if faced with the legal issue of whether to extend the law to find the tort of wrongful discharge, would not have done so. We disagree.

Generally, state courts are free to determine whether to apply new state court rulings retroactively or prospectively. *Great Northern R.R. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932). The general rule is that judicial decisions apply retroactively subject only to limited exceptions. *See Acoff v. Abston*, 762 F.2d 1543 (11th Cir. 1985); *see also People in Interest of C.A.K.*, 652 P.2d 603 (Colo.1982).

Colorado has adopted a three factor test governing the retroactivity of decisions in civil cases.

> "First, a 'decision to be applied *non* retroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, or by deciding an issue of first impression whose resolution was not clearly foreshadowed.' ... Second, a court must 'weigh the merits and demerits in each case by looking to the history of the rule in question, its purpose and effect, and whether retrospective application will further or retard its operation.' ... Third, the court must weigh the inequity that would be imposed by retroactive application in order to avoid injustice or hardship." (emphasis added)

*Marinez v. Industrial Commission*, 746 P.2d 552 (Colo.1987).

In applying the *Marinez* standards to the circumstances here, we conclude that the criteria for retroactive application are present. The attempt to defraud the United States government, which plaintiff alleges in his complaint, was clearly prohibited by federal law, *i.e.*, 18 U.S.C. § 1001 (1982) (originally enacted as Act of June 25, 1948,

ch. 645, § 1001, 62 Stat. 749). *United States v. Blazewicz*, 459 F.2d 442 (6th Cir. 1972).

Second, the public policy exception to at-will employment provides a remedy to an individual who is penalized by an employer for refusing to engage in illegal conduct. And, retroactive application of the *Cronk* decision would further the purpose and effect of this rule of law. *See Marinez v. Industrial Commission, supra.*

Additionally, the equities favor retroactive application to the case here. A contrary decision would penalize plaintiff for the responsibility he showed and release defendant from any liability for its alleged tortious conduct.

### IV.

■ Defendant contends that, even if plaintiff has adequately stated a claim for wrongful termination under the circumstances here, the claim is preempted by federal law. We disagree.

Defendant contends that employment contracts of private companies subcontracted to do work for the United States government are not subject to state law wrongful discharge claims. We recognize that under U.S. Const. art. 6, cl. 2, state laws that interfere with, or are contrary to, the laws of Congress are preempted.

Preemption generally is applicable if congressional legislation, either explicitly or implicitly, reflects an intent to occupy an entire field or if a particular state law actually conflicts with a valid federal law. *Brubaker v. Board of County Commissioners*, 652 P.2d 1050 (Colo.1982).

Defendant cites several federal cases, including *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959) and *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985) in support of its preemption argument. These cases, however, involve existing labor union contracts subject to federal labor law. Defendant does not argue that there is a union contract involved here.

In *Lathrop v. Entenmann's, Inc.*, 770 P.2d 1367 (Colo.App.1989) the court held that the common law tort of retaliatory discharge, based upon a claim that an employee was terminated for filing a workers' compensation claim, was not preempted by federal workers' compensation law. In *Lathrop*, as here, the basis of plaintiff's claim did not arise from a provision of the employment contract but "arises out of the state's public policy." The tort action in *Lathrop* did not interfere with federal labor laws and was not preempted. The facts of this case do not demonstrate even the possibility of a conflict with federal law. *See Lingle v. Norge Division of Magic Chef, Inc.*, 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (state law claim for wrongful discharge not preempted where no interpretation of collective bargaining agreement was required).

Hence, defendant's contention that plaintiff's complaint is preempted by federal law is without merit.

### V.

Since it may reoccur at the retrial of this case, we address defendant's argument that the trial court erred in admitting a memorandum of the NASA project manager which recited plaintiff's claims that he was terminated for objecting to design deficiencies in the test equipment. We disagree with defendant and conclude that the memorandum falls within the hearsay exception of CRE 803(8), and is therefore admissible.

The NASA project manager prepared a memorandum to his supervisor regarding the cost overrun on one of the Martin Marietta contracts. It recited plaintiff's claim that he was terminated for objecting to the design deficiencies in the test equipment caused by defendant's efforts to reduce costs. CRE 803(8) provides that documents which are public records setting forth either the activities of the agency or observations made pursuant to a duty imposed by law are admissible as an exception to the hearsay rule. *People v. Fueston*, 717 P.2d 978 (Colo.App.1985), *aff'd in part, rev'd in part on other grounds*, 749 P.2d 952 (Colo. 1988).

Defendant contends that the memorandum lacked sufficient reliability because almost three months passed between the meeting that was the subject matter of the memorandum and the writing of the memorandum. Since the document falls within the exception to hearsay provided by CRE 803(8), these contentions go to the weight to be afforded the evidence, and not to its admissibility.

In light of the disposition of this case, defendant's cross-appeal argument for additional costs is moot.

We have considered defendant's other arguments on appeal and find them to be without merit.

The judgment is reversed, and the cause is remanded for further proceedings.

PIERCE and RULAND, JJ., concur.