**Diane TIPSWORD, Plaintiff,**

v.

**OGILVY & MATHER, INC., Defendant.**

**No. 94 C 7584.**

United States District Court,
N.D. Illinois,
Eastern Division.

Jan. 29, 1996.

Diane Patricia Jackson, Diane P. Jackson & Associates, Schaumburg, IL, for plaintiff.

David L. Weinstein, Rosenthal & Schanfield, P.C., Chicago, IL, Howard J. Rubin, Davis & Gilbert, New York City, Kristen Emma Poplar, Rosenthal and Schanfield, Chicago, IL, for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, Chief Judge:

Plaintiff Diane Tipsword brings this three-count complaint against Ogilvy & Mather, Inc. ("O & M"), alleging age discrimination, gender discrimination, and retaliatory discharge. Presently before this court is the defendant's motion for summary judgment on all counts. For the reasons set forth below, the motion is granted in its entirety.

### I. Background [1]

Tipsword began working in the Chicago office of O & M, an advertising and direct marketing agency, in 1977. She was promoted to the position of senior vice president in 1989, and by 1993, at the age of 61, was the director of finance for the Chicago office. Def.'s 12(M) ¶¶ 3, 8. However, on December 6, 1993, she met with Derek Carstens, the

---

1. This factual discussion is gleaned from the parties' submissions under General Rules 12(M) and 12(N) of the United States District Court for the Northern District Court of Illinois ("Local Rule 12(M)" and "Local Rule 12(N)"). Under Local Rule 12(M), a party moving for summary judgment must submit "a statement of material facts as to which the moving party contends there is no genuine issue and that entitle the moving party to judgment as a matter of law." The non-movant must then specifically respond to each of the movant's statements, and include, "in the case of any disagreement, specific references to the affidavits, parts of the record, and other supporting materials relied upon." Local Rule 12(N)(3)(a). The facts asserted in the movant's 12(M) statement will be deemed admitted if the non-movant's responses do not contain citations to specific portions of the record supporting the contrary position. Skagen v. Sears, Roebuck & Co., 910 F.2d 1498, 1500 (7th Cir.1990). Under these standards, Tipsword's responses to paragraphs 13–19 and 41 of O & M's 12(M) Statement are insufficient, and therefore we deem them admitted. In addition, several times the plaintiff simply cites the same deposition testimony cited by the defendant to support its 12(M) statement; in those instances we have reviewed the depositions and decided whether the cited portions support either party's assertion.

president of O & M's Chicago office, who told her that he was "retiring" her from the company because of a reorganization of the office. Def.'s 12(M) ¶ 5. It was this event that precipitated the instant lawsuit.

According to Carstens, Tipsword's termination was the result of a reduction-in-force ("RIF") at O & M, caused by the financial hardships over the previous year and the loss of a major client. Def.'s 12(M), Ex. C ¶¶ 4–6. In addition, Carstens contends that he was under a mandate from O & M's corporate headquarters in New York to reduce his office's financial and administrative costs, and centralize certain functions at the New York office. Def.'s 12(M), Ex. C. ¶ 8; Pl.'s 12(N), Ex. B. at 49. Carstens maintains that his decision to terminate Tipsword in the December 1993 RIF was based on three factors.[2] First, he claims that two of her subordinates—Robert Donovan, a 45–year old male, and Joan Peterson, a 54–year old female—were fully capable of performing the plaintiff's duties and were paid significantly less than her. Def.'s 12(M) ¶ 10, Ex. C ¶ 7, Ex. D ¶ 9. Second, in accordance with the mandate from O & M's headquarters, he concluded that Tipsword's financial duties would be performed with greater frequency in New York, thus militating against a separate position in the Chicago office. Third, he claims to have been dissatisfied with Tipsword's "computer and MIS" work. Def.'s 12(M). Ex. C ¶ 8.

Tipsword continued working for O & M until December 31, 1993, and was paid by the company through January 15, 1994. Def.'s 12(M) ¶¶ 6–7. In February 1994, O & M heard from Tipsword's lawyer who demanded compensation because of his client's termination, and supported his demand with O & M salary and bonus information obtained by Tipsword prior to her departure. Def.'s 12(M) ¶¶ 26–27. On February 8, 1994, Tipsword filed a charge of age and gender discrimination with the Equal Employment Opportunity Commission ("EEOC"), and received a right to sue letter from the EEOC in late 1994. She filed the instant action on

December 21, 1994, alleging age discrimination (Count I), sex discrimination (Count II), and retaliatory discharge (Count III). With regard to this last count, the plaintiff contends that she was terminated because on December 9, 1992, she questioned an accounting decision of Bruce Jasurda, a superior at O & M. Specifically, she claims that Jasurda wanted to carry over certain expenses until 1993, thereby increasing the money available for bonuses, whereas she believed these expenses should be recognized in 1992. Tipsword admits that her method of accounting was eventually used, and that Jasurda never spoke with her again about the incident. Def.'s 12(M) ¶¶ 51–52. Nonetheless, she contends that she was terminated one year after the event because of her protest.

Although the parties have filed their joint pretrial order, O & M now moves for summary judgment on all three counts, or in the alternative, for partial summary judgment on Counts I and II.

## II. Summary Judgment Standard

■■■ Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). The moving party bears the initial burden of identifying "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (quoting Fed.R.Civ.P. 56(c)). The movant may satisfy this burden by presenting specific evidence on a material issue, or by pointing out "an absence of evidence to support the nonmoving party's case." *Celotex Corp.*, 477 U.S. at 325, 106 S.Ct. at 2554. Once the moving party has met this burden, the non-moving party cannot simply rest on the allegations in the pleadings; rather, the non-movant "must set

---

**2.** Along with Tipsword, eighteen other employees were let go by O & M—six men and twelve women, most of whom were younger than Tips-

word. Def.'s 12(M) ¶¶ 14–16. The composition of O & M's Chicago office at the time of this RIF was 33.1% male and 66.9% female. *Id.* ¶ 14.

forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). In ruling on a motion for summary judgment we read the facts in a light most favorable to the non-moving party, *Cuddington v. Northern Ind. Public Serv. Corp.*, 33 F.3d 813, 815 (7th Cir.1994), and refrain from making credibility determinations, *see Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir.1992).

### III. Discussion
#### A. Counts I and II (Age and Gender Discrimination)

▮▮ Tipsword's first two counts are based on the theory that she was illegally terminated because of her age and sex and not because of any legitimate reason to reduce O & M's workforce. Substantively, Count I is brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623(a)(1), and Count II under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–2(a)(1). Because Tipsword does not present any "direct" evidence of age or sex discrimination—that is, "evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents," *Hill v. Burrell Communications Group, Inc.*, 67 F.3d 665, 667 (7th Cir.1995) (quoting *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994))—she must proceed with both counts according to the burden-shifting analysis established by *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973). Simply put, this indirect method of proving invidious discrimination requires the plaintiff to first put forth sufficient evidence of the elements of her prima facie case. *Collier v. Budd Co.*, 66 F.3d 886, 889 (7th Cir.1995). If the plaintiff can do this then a rebuttable presumption of discrimination arises, and the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the termination. *Gadsby v. Norwalk Furniture Corp.*, 71 F.3d 1324, 1330 (7th Cir.1995). Once the defendant satisfies this burden of production, then the plaintiff must come forward with evidence showing that this explanation is actually a pretext for unlawful discrimination. *Id.* Where the plaintiff cannot present evidence that the proffered justification is pretextual, the defendant is entitled to summary judgment. *Collier*, 66 F.3d at 889; *DeLuca v. Winer Indus., Inc.*, 53 F.3d 793, 797 (7th Cir.1995).

▮▮ In its motion for summary judgment O & M does not challenge Tipsword's ability to satisfy her prima facie case.[3] Rather, it contends that the plaintiff cannot undermine its legitimate reasons for terminating her. O & M proffers three reasons for including Tipsword in the December 1993 RIF. First, it contends that due to the loss of a major client and an overall downturn of business in 1993, Carstens decided to reduce labor costs by removing tasks from certain employees and consolidating them with others. It maintains that Tipsword, who was one of the highest paid employees in the accounting department, was chosen for termination because her duties could be handled by Peterson and Donovan, two of her subordinates. Indeed, Carstens believed that these two employees were already performing "virtually all" of Tipsword's duties just prior to her termination, and thus her removal would cause a limited amount of disruption. Def.'s 12(M), Ex. C. ¶ 7.[4] Second, Carstens contends that O & M had directed him to reduce administrative costs in areas that could be. centralized in its headquarters in New York. Given that financial operations seemed an easy target for centralization, Carstens claims that Tipsword's position was an appropriate target for elimination.

**3.** In the context of a RIF, an ADEA plaintiff makes out his prima facie case "by showing that '(1) he was in the protected age group, (2) he was performing to his employer's legitimate expectations, (3) he was discharged, and (4) younger employees were treated more favorably.'" *Collier*, 66 F.3d at 889 (quoting *Roper v. Peabody Coal Co.*, 47 F.3d 925, 926 (7th Cir.1995)) (footnote omitted). For a plaintiff proceeding under Title VII, the elements are only slightly modified: she must demonstrate her membership in a protected class, her satisfactory performance, her discharge from employment, and the more favorable treatment of those outside her protected class. *Samuelson v. Durkee/French/Airwick*, 976 F.2d 1111, 1113 (7th Cir.1992).

**4.** Tipsword challenges this assertion, but fails to present any evidence indicating that Carstens did not believe this to be the case.

*Id.* ¶ 8. Third, Carstens claims that he was not satisfied with Tipsword's performance in "computer and MIS areas." *Id.* ¶ 8. O & M contends that due to these three factors, Tipsword's position was eliminated and Donovan and Peterson took over the plaintiff's responsibilities. We find all three of these proffered reasons for termination sufficient to satisfy O & M's burden of production. *See Anderson v. Baxter Healthcare Corp.,* 13 F.3d 1120, 1125–26 (7th Cir.1994) (recognizing reduction of salary costs as legitimate nondiscriminatory reason for termination); *Samuelson,* 976 F.2d at 1114 (recognizing economic change caused by merger as legitimate nondiscriminatory reason for reduction in force); *Komel v. Jewel Companies,* 874 F.2d 472, 473–74 (7th Cir.1989); *Pearlstein v. Staten Island Univ. Hosp.,* 886 F.Supp. 260, 269 (E.D.N.Y.1995) (recognizing RIF as legitimate reason for termination).

▆▆▆ Thus, to avoid summary judgment Tipsword must produce evidence suggesting that these explanations are mere pretext for age or gender discrimination. "Pretext" does not mean that the employer was mistaken in its decision; rather, pretext "means a lie, specifically a phoney reason for some action." *Russell v. Acme–Evans Co.,* 51 F.3d 64, 69 (7th Cir.1995). Therefore, we must decide whether Tipsword has produced sufficient evidence from which a rational trier of fact could infer that O & M was untruthful about its proffered reasons for firing her. *Courtney v. Biosound, Inc.,* 42 F.3d 414, 418 (7th Cir.1994). Because she has no direct evidence of age or gender discrimination, Tipsword must show either "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [her] discharge, or (3) that they were insufficient to motivate discharge." *Cliff v. Board of Sch. Comm'rs of City of Indianapolis,* 42 F.3d 403, 412 (7th Cir.1994).

▆▆▆ Tipsword first challenges O & M's contention that her position was eliminated, arguing instead that the position remains intact and that Donovan was given the title of director of finance in December 1994. However, the parties do not dispute that prior to December 1993, three individuals performed financial functions at O & M: Tipsword, Donovan, and Peterson. After 1993, only Donovan and Peterson performed these functions. Although Donovan received the title "director of finance," there is no evidence that another employee was hired by O & M to perform financial duties in the Chicago office. By its very nature, a RIF leads to the consolidation of functions in the hands of fewer employees. Thus, the fact that Donovan performed Tipsword's duties, and even took on her title, does not undercut O & M's assertion that the financial duties previous performed by three employees in the Chicago office were subsequently performed by only two, and that Tipsword's position was eliminated.

The plaintiff next argues that although O & M was suffering some financial hardships in 1993, there was no economic reason to terminate her position. Pl.'s 12(N)(3)(b) ¶ 13. In support of this contention, however, she points to a portion of Donovan's deposition in which he explains that the costs of administrative and financial personnel at O & M are not billed out to clients, but are part of the agency's overhead expenses. This statement does not support Tipsword's contention that the elimination of her position was without economic justification. Indeed, because O & M had directed its offices to reduce overhead costs in order to compensate for shrinking revenues, Def.'s 12(M), Ex. C. ¶ 5, the elimination of an "overhead" position such as Tipsword's appears particularly appropriate.[5]

Plaintiff also attacks O & M's contention that her position was slated for elimination because financial functions were to be performed with greater frequency in the New York headquarters, and its assertion that she was not competently performing her computer and MIS duties. Although Tipsword does present evidence to challenge the veracity of these two reasons—deposition testimony from Donovan indicating that financial functions were not actually moved to New York, and paragraph 16 of her verified complaint in

---

**5.** Moreover, in the same deposition Donovan confirmed O & M's economic precariousness in 1993, further undercutting Tipsword's interpretation of his testimony. Def.'s 12(N)(3)(b) ¶ 13.

which she asserts that she received no prior indication that her performance was unacceptable—this does not preclude the entry of summary judgment. This is because O & M has offered three reasons for including Tipsword in the December 1993 RIF, and the plaintiff has lodged credible attacks on only two. So long as at least one of the reasons goes unchallenged—and that reason standing alone would have been sufficient to justify the termination—the fact that Tipsword raises genuine factual issues with regard to the other reasons is of no import. *Russell,* 51 F.3d at 69 ("The fact that some of these reasons were successfully called into question by [the plaintiff's] deposition or affidavit does not defeat summary judgment if at least one reason for each of the actions stands unquestioned."); *Sample v. Aldi Inc.,* 61 F.3d 544, 549 (7th Cir.1995).[6]

O & M's decision to reduce labor costs and consolidate financial operations in a fewer number of employees was ample justification for terminating Tipsword, the highest paid employee in the department whose duties were already being performed by Donovan and Peterson. As has been oft-stated, we do not "sit as a super-personnel department that reexamines an entity's business decisions." *Sample,* 61 F.3d at 551 (quoting *McCoy v. WGN Continental Broadcasting Co.,* 957 F.2d 368, 373 (7th Cir.1992)). Tipsword has not demonstrated that a reasonable jury could conclude that O & M's proffered reasons for terminating her were mere pretext for age or gender discrimination. Ac-

cordingly, we grant summary judgment to O & M on Counts I and II of the plaintiff's complaint.[7]

### B.  *Count III (Retaliatory Discharge)* [8]

Plaintiff's final claim is that O & M terminated her in retaliation for her opposition to Bruce Jasurda's plan to have the Chicago office carry-over certain 1992 expenses into the 1993 budget. To prevail on a claim of retaliatory discharge Tipsword must prove that she was discharged, that her discharge was in retaliation for her activities, and "that the discharge violates a clear mandate of public policy." *Meister v. Georgia–Pacific Corp.,* 43 F.3d 1154, 1160 (7th Cir. 1995) (quoting *Hiatt v. Rockwell Int'l Corp.,* 26 F.3d 761, 767 (7th Cir.1994)). It is settled law that the second element of this cause of action cannot be proven where the employer has a valid, nonpretextual reason for the employee's termination. *Hartlein v. Illinois Power Co.,* 151 Ill.2d 142, 176 Ill.Dec. 22, 30, 601 N.E.2d 720, 728 (1992). Thus, absent direct evidence that Tipsword's disagreement with Jasurda caused her discharge, "once the employer produces some valid reason[ ] for the dismissal[ ], the burden remains with [the plaintiff] to show that the employer's purported reason[ ] [is] no more than a mere pretext." *Meister,* 43 F.3d at 1160.

In this case there is no "direct" evidence that Tipsword's termination was intended to avenge her disagreement with Jasurda.[9] Nor can she demonstrate a causal

**6.** Plaintiff also disputes O & M's contention that she was actually part of the December 1993 RIF, arguing instead that she was scheduled to be terminated in March 1994, but "when she balked at early retirement, she was terminated at year-end." Pl.'s Memorandum in Opposition to Summary Judgment, at 3. However, she fails to explain how this contention shows O & M's proffered reasons to be pretextual. Indeed, rather than undermining O & M's justifications, the existence of a plan to have Tipsword retire in March 1994 appears consistent with an intention by O & M to lower administrative costs by eliminating her position.

**7.** As we have granted summary judgment on Counts I and II, we need not consider the defendant's argument that because Tipsword disseminated confidential information, partial summary judgment on the issue of damages is appropriate.

**8.** Although dismissal of the only federal claims in this action would normally dictate that we decline to exercise supplemental jurisdiction over this remaining state law claim, *see Korzen v. Local Union 705, Int'l Bhd. of Teamsters,* 75 F.3d 285, 288–89 (7th Cir.1996), we nonetheless consider the merits of Count III because it is so interrelated with the federal claims and there exists no danger of an unnecessary intrusion into state law, *see Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1182 (7th Cir.1993).

**9.** Although the plaintiff disagrees with O & M on this point, Pl.'s 12(N) ¶ 53, she offers no evidence to support her contention. For example, she does not contend that Jasurda told her she was to blame for lower bonuses at O & M, or that he would get back at her for challenging his accounting methods. Rather, she merely cites portions of her deposition testimony in which she

connection indirectly, since she has failed to produce any evidence indicating that the proffered reason for her termination was pretextual. *Roger*, 21 F.3d at 151. As discussed above, O & M decided to reduce overhead and administrative costs in order to account for declining revenues, and targeted for termination those employees whose duties could be performed by others in the company. Tipsword's duties could be performed by Donovan and Peterson, and Carstens believed the two of them had already taken on many of her tasks by 1993. The desire to reduce labor costs is a legitimate reason for terminating an employee, and Tipsword has not meet her burden of showing this reason to be pretextual. Accordingly, as the plaintiff has not produced any evidence from which a rational jury could conclude that her termination was caused by her disagreement with Jasurda, summary judgment on Count III is appropriate.

In addition, we also conclude that summary judgment is appropriate because the plaintiff has failed to demonstrate that even if she had been fired from O & M because of a dispute over accounting, such an act would violate clearly mandated public policy. She does not claim in her deposition that Jasurda asked her to engage in criminal activity, or that the recognition of the expenses in 1993 would have violated generally accepted accounting principles. While Illinois public policy may be implicated by the refusal to engage in fraudulent or illegal accounting practices, *see Johnson v. World Color Press, Inc.*, 147 Ill.App.3d 746, 101 Ill.Dec. 251, 256, 498 N.E.2d 575, 580 (1986), *appeal denied*, 113 Ill.2d 575, 106 Ill.Dec. 47, 505 N.E.2d 353 (1987), we do not believe that the dispute at issue in this case would "strike at the heart of a citizen's social rights, duties, and responsibilities," and violate clearly mandated public policy, *Petrik v. Monarch Printing Corp.*, 143 Ill.App.3d 1, 97 Ill.Dec. 809, 816, 493 N.E.2d 616, 623 (1986) (quoting *Palmateer v. International Harvester Co.*, 85 Ill.2d 124, 52 Ill.Dec. 13, 15–16, 421 N.E.2d 876, 878–79 (1981)). Accordingly, summary judgment on Count III is appropriate.

states her belief that retaliation is one of the reasons for her termination. This subjective be-

## IV. Conclusion

For the reasons set forth above, the defendant's motion for summary judgment is granted as to all three counts of the complaint. It is so ordered.

lief is not "direct" evidence.