Ronald JOHNSON, Plaintiff–Appellant,

v.

**CURTIS DWORKEN CHEVROLET**
and Dudley Dworken, Defendants–
Appellees.

No. Civ. A.99–796 (RMU).

United States District Court,
District of Columbia.

Oct. 29, 1999.

774

David H. Shapiro, Swick & Shapiro, Washington, D.C., for Ronald Johnson.

John E. Prominski, Jr., Karin M. Ryan, Wilkes, Artis, Hendrick & Lane, Chtd., Washington, D.C., Nelson Deckelbaum, Deckelbaum, Ogens & Fischer, Chtd., Washington, D.C., for Curtis Dworken Chevrolet Inc. and Dudley Dworken.

## MEMORANDUM OPINION

URBINA, District Judge.

**Adopting the U.S. Bankruptcy Judge's Findings of Fact and Conclusions of Law; Affirming the Order Granting Summary Judgment to the Defendants**

## I. INTRODUCTION

This matter comes before the court upon the plaintiff Rolando Johnson's appeal from an order of the United States Bankruptcy Court granting summary judgment to the defendants as to his claims of racial discrimination and retaliation under the District of Columbia Human Rights Act ("DCHRA"). For the reasons which follow, the court will adopt the Bankruptcy Court's proposed findings of fact and conclusions of law and will affirm the order granting summary judgment to both defendants on the DCHRA claims.

## II. BACKGROUND

For a more detailed recapitulation of the factual background and procedural history in this matter, the court refers to and adopts the bankruptcy court's proposed findings of fact.

### A. *Factual Background*

Beginning in October 1991, Mr. Johnson, who is African–American, was employed as a used-car sales manager for Curtis Dworken Chevrolet, Inc. ("Dworken"), which sells new and used automobiles in the District of Columbia.[1] The owner and president of the company is Dudley Dworken ("Mr. Dworken"). *See* Dworken Affidavit ¶¶ 2, 3.

This lawsuit arises out of events which occurred in March and April 1996. At that time, Mr. Johnson had a lawsuit pending in D.C. Superior Court alleging that Dworken had discriminated against him on the basis of his race. Mr. Johnson believed that Dworken was looking for a pretext to fire him in retaliation for filing his earlier discrimination claim.[2]

On March 29, 1996, Mr. Johnson lent a "loaner" car to a customer, Luciano O'Tano, while Mr. O'Tano's car was being repaired. Mr. Johnson neglected to have the customer sign an assumption-of-liability form with respect to the loaner vehicle. That form would have protected Dworken by requiring the customer to reimburse Dworken for any damage the loaner vehicle sustained while in the customer's possession. On April 1, 1996, the customer had an accident which "totaled" the loaner vehicle. *See* Dworken Aff. ¶ 11(b); O'Tano Aff. ¶ 4. The customer told Dworken he had never signed an assumption-of-liability form and that the signature bearing his name on the form was not his signature. *See* O'Tano Aff. ¶¶ 5–6; Dworken Aff. ¶¶ 11(h–k).

When Mr. Johnson realized the potential implications of his failure to have the customer fill out and sign the assumption-of-liability form, he filled out such a form himself and falsely signed the customer's name on it. Mr. Johnson admits, "Plaintiff partially filled out an Assumption of Liability form and signed the customer's name." Opp. to Mot. for Summ.J. at 5. Mr. John-

---

**1.** Dworken first hired Mr. Johnson as a new-car sales manager in January 1990. After about nine months, Mr. Johnson left Dworken to take a position with another automobile dealership. Dworken re-hired Mr. Johnson, however, in September 1991, this time as a used-car salesperson. After Mr. Johnson had been back with Dworken for about one month, Dworken promoted him to Retail Used Car Manager. *See* Dworken Affidavit ¶¶ 4–5.

**2.** In April 1994, Mr. Johnson filed a complaint with the D.C. Department of Human Rights, alleging that Dworken had discriminated against him on the basis of his age and race in failing to promote him to Used Car Manager. On August 1, 1994 Dworken promoted Mr. Johnson to Retail Used Car Manager. In August 1994 Mr. Johnson withdrew his complaint with the Department of Human Rights and filed Civil Action No. 94–9973 in D.C. Superior Court. *See* Dworken Affidavit ¶¶ 6–8.

son asserts, however, that "he did not intend to submit that form, but merely filled it out as an exercise in wishful thinking." *Id.* at 5–6. Wholly apart from any question of credibility, it is difficult to ascertain what the plaintiff means when he says that he forged the form as "an exercise in wishful thinking." Consistent with Mr. Johnson's other representations, the court will construe the assertion to mean that he did not intend to submit the form or have Dworken rely on it; for purposes of this motion, the court will also assume the truth of that assertion. It remains uncontroverted, however, that Mr. Johnson admits he forged the customer's signature.[3]

The parties agree that several days later, Dworken came into possession of the form. The parties disagree, however, over how the form made its way into the hands of Dworken's management. Mr. Dworken, owner of the dealership, asserts that Mr. Johnson personally handed him the forged form. Mr. Johnson, by contrast, contends that another employee saw the forged form on Mr. Johnson's desk and gave it to Mr. Dworken. *See* Opp. to Mot. for Summ.J. at 6. Because Mr. Johnson is the party opposing summary judgment, the bankruptcy court properly assumed that Mr. Johnson's version of this event is correct, and this court does likewise.

Mr. Dworken also asserts that Mr. Johnson lied to him by telling him that the customer signed the form; Dworken only learned of the forgery, he says, after meeting with the customer and interviewing several of Mr. Johnson's co-workers. Mr. Johnson, on the other hand, contends that he affirmatively told Dworken that the customer had not actually signed the form. Once again the bankruptcy properly assumed that Mr. Johnson's version of this event is correct, and this court does likewise.

Once Dworken learned that the customer had not signed the form—i.e., that Mr. Johnson had forged the customer's signature—it terminated Mr. Johnson's employment with the dealership. On April 9, 1996, Dworken's general manager, Daniel Franklin, filled out a termination report stating that Mr. Johnson had been fired for "Failure to follow company policies and misrepresenting facts to management." Dworken submitted an affidavit stating that it terminated Mr. Johnson for three reasons: (1) Mr. Johnson failed to obtain the customer's signature on the assumption-of-liability form; (2) Mr. Johnson lied to Dworken when he said the customer had signed the form; and (3) Mr. Johnson forged the customer's signature on the form. *See* Supplemental Affidavit of Dudley Dworken dated September 2, 1997 ("Supp. Dworken Aff."), ¶ 2. Dworken cited written company policies which provided that (1) all employees who lend a car to a customer must obtain the customer's signature on an Assumption of Liability form; (2) an employee may be immediately terminated if he makes a false entry in any book, report or statement with the intent to defraud; and (3) an employee shall be terminated for violation of company policy. *See* Supp. Dworken Aff. ¶¶ 3–5 (citing Ex. 1, Company Policy and Employee Handbook, at 29–30, 32–33 and 46–47).

## B. *Procedural History*

Mr. Johnson originally filed this action in D.C. Superior Court, but Dworken removed the case to the United States Bankruptcy Court for the District of Columbia in April 1997. Dworken filed its motion for summary judgment in July and Mr. Johnson filed his opposition in August 1997. By order dated September 18, 1998, the bankruptcy court deferred decision on Dworken's motion pending completion of a 45–day discovery period and authorized Mr. Johnson to file supplemental opposi-

---

**3.** Mr. Johnson insists that he did not "forge" the customer's signature because he did not intend for Dworken to rely on it. This is a matter of semantics and the fact remains that

Mr. Johnson admits he placed what purported to be the customer's signature on the form in his own handwriting—"forgery," as the term is commonly understood.

tion to the motion within two weeks after the close of discovery. By order dated November 5, 1998 the court extended discovery. Mr. Johnson, however, declined to conduct any discovery and did not file any supplemental opposition by the extended deadline of November 27, 1998.

The bankruptcy court reached a tentative decision on Dworken's motion at a hearing on October 29, 1997. The court first found that, viewing the evidence in the light most favorable to Mr. Johnson, he had established a *prima facie* case of racial discrimination under the DCHRA. The court next found that Dworken had proffered a legitimate, non-discriminatory reason for the termination—Mr. Johnson's negligence in leaving the forged form on his desk at a time when it was likely that his employer would be looking for the form and might rely on it in recovering from the customer. The court initially indicated it would grant Dworken's motion. Mr. Johnson's arguably negligent behavior, however, was not one of the grounds offered by Dworken for his termination. The bankruptcy court recognized that its tentative decision had erred on this score. *See Lanphear v. Prokop*, 703 F.2d 1311, 1316 (D.C.Cir.1983) (quoting *Texas Dep't. of Comm. Affairs v. Burdine*, 450 U.S. 248, 255–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)) (court cannot grant summary judgment by substituting its own reason for the one offered by defendants as the basis for an adverse employment action). Accordingly, the court reconsidered Dworken's motion, properly confining its inquiry to the reasons which Dworken actually articulated as its bases for terminating Mr. Johnson. The court afforded Mr. Johnson a "full and fair opportunity" to demonstrate that Dworken's stated reasons were pretextual.

Finally, on March 5, 1999 the bankruptcy court issued proposed findings of fact and conclusions of law, as well as a proposed opinion granting the defendants' motion for summary judgment. *See In re Curtis Dworken Chevrolet, Inc.*, Case No.

97–0644, Adversary Proceeding No. 97–0036 (Bank'yD.D.C. March 5, 1999) (hereinafter "the Bankruptcy opinion").

## III. LEGAL STANDARD

### A. *District Court's Review of Bankruptcy Court Decisions*

On appeal from a bankruptcy court, a district court "may affirm, modify, or reverse a Bankruptcy Court's judgment, order, or decree, or remand with instructions for further proceedings. Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the Bankruptcy Judge to judge the credibility of the witnesses." Fed.R.Bankr.P. 8013. *Cf.* the deference accorded under Fed. R.Civ.P. 52(a). "The burden of proof is on the party that seeks to reverse the Bankruptcy Court's holding. That party must show that the court's holding was clearly erroneous as to the assessment of the facts or erroneous in its interpretation of the law and not simply that another conclusion could have been reached." *In re Ford Johnson*, 236 B.R. 510, 518 (D.D.C.1999) (citing *Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518). This court will not lightly conclude that the bankruptcy court's findings of fact are clearly erroneous. "A finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 92 L.Ed. 746 (1948) Or, in the vivid formulation of the Seventh Circuit, "To be clearly erroneous, a [factual] decision must ... strike us as wrong with the force of a five-week old, unrefrigerated dead fish." *In re Ford Johnson*, 236 B.R. at 518 (citation omitted). Questions concerning the application of the controlling law, however, are reviewed *de novo. Id.* (citation omitted).

**B. *The Standard for Summary Judgment***

"As this appeal is from the grant of summary judgment, the familiar standards for review of such a disposition apply. This court conducts an independent review of the record, but the substantive standard is the same as that utilized by the trial court," in this case the bankruptcy court. *Millstein v. Henske,* 722 A.2d 850, 853 n. 7 (D.C.1999). Summary judgment is appropriate upon a finding that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). The substantive law upon which a claim rests determines which facts are "material." *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). If a fact bears upon an essential element of the legal claim, then it is material; otherwise, it is not. *See id.; Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Only disputes over facts that can establish an element of the claim, and thus might affect its ultimate resolution, can create a "genuine issue" sufficient to preclude summary judgment. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548.

To prevail on a motion for summary judgment, the moving party bears the burden of establishing that there are no genuine issues of material fact and that the nonmoving party has failed to offer sufficient evidence to support a valid legal claim. *See Anderson,* 477 U.S. at 256, 106 S.Ct. 2505; *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. In ruling on the motion, the court must accept the evidence of the nonmoving party as true and must draw all justifiable inferences in favor of the nonmoving party. *See Anderson,* 477 U.S. at 255, 106 S.Ct. 2505. It is not sufficient, however, for the nonmoving party to establish "the mere existence of a scintilla of evidence in support of the [nonmoving party's] position ...; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252, 106 S.Ct. 2505. If the evidence in favor of the nonmoving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249–50, 106 S.Ct. 2505 (citations omitted).

**C. *Shifting Burdens of Proof under the DC Human Rights Act***

■ Count I alleges that Dworken discriminated against Mr. Johnson on the basis of his race (African–American). The DCHRA provides, in pertinent part,

(a) General.—It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based upon the race ... of any individual:

(1) By an employer.—To fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion; or to limit, aggregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee.

D.C.Code 1–2512. The legal analysis of a DCHRA claim follows the pattern established in the landmark Title VII case, *McDonnell Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

■ Following the *McDonnell Douglas* framework, there are three steps to proving discrimination under the DCHRA. First, the plaintiff must establish a *prima facie* case of discrimination. If the plaintiff is able to make out a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the allegedly discriminatory or retaliatory adverse employment action. This is a minimal burden on the employer and it is a burden of production, not a burden of persuasion. *See Goss v. George Washington Univ.,* 942 F.Supp. 659, 663 (D.D.C.1996). If the employer articulates

such a legitimate reason, and the reason is credible, the burden shifts back to the plaintiff to demonstrate that the stated reason was a pretext for discrimination or retaliation. *See Aikens v. United States Postal Service*, 665 F.2d 1057, 1060 (D.C.Cir.1981); *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361 (D.C.1993).

■ Finally, "if [the plaintiff] successfully shows that a [discriminatory or] retaliatory motive played a motivating part in an adverse employment action, the employer can nevertheless avoid liability by demonstrating by a preponderance of the evidence that it would still have taken the same action absent [discriminatory] or retaliatory motive." *Carpenter v. FNMA*, 174 F.3d 231, 236 (D.C.Cir.1999) (case involving only DCHRA claim) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 252–53, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989)).

## IV. DISCUSSION

■ Preliminarily, the court notes that the District of Columbia courts look to federal employment-discrimination and civil-rights statutes and case law for guidance in deciding DCHRA claims. *See Blackman*, 694 A.2d at 869 n. 3. This court will do so, as well.

### A. *Mr. Johnson's Prima Facie Case and Dworken's Response*

■ For the reasons which follow, the court agrees with the bankruptcy court that Mr. Johnson made out a *prima facie* case of racial discrimination under the DCHRA. To establish a *prima facie* case, Mr. Johnson had to show that (1) he belongs to a protected class; (2) he was qualified for the job from which he was terminated; (3) his termination occurred despite his employment qualifications; and (4) his termination was based on the characteristic that placed him in the protected class. *See Blackman v. Visiting Nurses Ass'n*, 694 A.2d 865, 868–69 (D.C.1997). Because Mr. Johnson is African–American, he belongs to a DCHRA protected class. The court finds that Mr. Johnson possess-

es the skills required to be an automobile sales manager, as evinced by the fact that the defendants re-hired him after he left for nine months, and by the fact that he secured employment in such a position following his termination. The fact that he allegedly violated company policy or was dishonest does not render him generally unqualified for the position. Moreover, the defendants have never cited inadequate qualifications or skills as a reason for Mr. Johnson's termination. Therefore, Mr. Johnson satisfies the second and third elements of a *prima facie* case under the DCHRA. Lastly, Mr. Johnson won a verdict after jury trial of a prior discrimination claim which he lodged against Dworken. The bankruptcy court reasoned soundly that "the fact that Johnson succeeded on his first [racial] discrimination claim against Curtis [Dworken] Chevrolet suggests that Johnson may have been fired because of racial animosity by his employer." As the bankruptcy court correctly held, that is sufficient to satisfy the fourth and final element of a *prima facie* case under the DCHRA.

■ Dworken, however, responded with undisputed facts which state a legitimate, nondiscriminatory, nonretaliatory reason for its decision to terminate Mr. Johnson's employment. Simply put, Dworken maintains that it terminated Mr. Johnson because, *inter alia*, Mr. Johnson failed to obtain a customer's signature on an important assumption-of-liability form and then forged the customer's signature on such a form. Significantly, Mr. Johnson's own version of the facts indicates that this was the same reason which Mr. Dworken gave him, in a face-to-face meeting, at the very moment when he informed Mr. Johnson that he was terminated: "Immediately upon arriving at work on April 9, plaintiff was summoned to a meeting with Dudley Dworken. *** Dworken asked plaintiff whether he had gotten the customer's signature on the Assumption of Liability form; plaintiff replied that he had not. *Dworken said that in that case,*

*plaintiff was fired."* Opp. to Mot. for Summ.J. at 6, emphasis added.

### B. *Whether Dworken's Stated Reasons were a Pretext for Discrimination or Retaliation*

 Mr. Johnson contends that Dworken's stated reasons for terminating him were pretexts for racial discrimination and retaliation. To prove pretext sufficient to withstand a properly supported motion for summary judgment, Mr. Johnson had to "produce sufficiently probative evidence to create a genuine issue 'both that the reason [offered for his termination] was false, and that discrimination [or retaliation] was the real reason.'" *Randall v. Howard University,* 941 F.Supp. 206, 211 (D.D.C.1996) (quoting *Saint Mary's Honor Center v. Hicks,* 509 U.S. 502, 515–17, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (Title VII case)), *aff'd,* 132 F.3d 1482 (D.C.Cir.1997). In other words, the court will not grant summary judgment "if the record indicates that the plaintiff presented sufficient evidence to cause a reasonable factfinder to find that the plaintiff had a *prima facie* case, *and that the employer's proffered nondiscriminatory reasons for its actions were not credible." Aka v. Washington Hosp. Ctr.,* 116 F.3d 876, 881 (D.C.Cir.1997) (Title VII case) (emphasis added). Mr. Johnson did not satisfy the latter part of this standard.

 The dispositive factor on this issue is that Mr. Johnson has never disputed two material facts: he failed to have the customer execute an assumption-of-liability form and he forged the customer's signature on such a form. Mr. Johnson asserts that he did not submit the form to Dworken and signed the form as an exercise in "wishful thinking." Because Mr. Johnson is the non-movant, this court assumes the truth of Mr. Johnson's assertions that he did not submit the falsified form to his employer and did not intend to do so. Nonetheless, these assumptions are of no avail to Mr. Johnson. As the bankruptcy

court cogently observed, "Johnson's assertion may create a dispute as to whether he actually intended to commit forgery, [but] that dispute is immaterial to the defendants' motion for summary judgment." *See* Bankruptcy Op. at 10.

In other words, accepting Mr. Johnson's version of the disputed facts does nothing to disturb the *un*disputed fact that he failed to have the customer execute the form and then proceeded to forge the customer's signature. Whether or not Mr. Johnson submitted the form to Dworken, his undisputed conduct clearly validates two of the legitimate, non-discriminatory reasons for termination which were articulated by Dworken. *Tipsword v. Ogilvy & Mather, Inc.,* 918 F.Supp. 217, 222 (N.D.Ill.1996) is illustrative on this score. There, the employer proffered three legitimate reasons for terminating the plaintiff employee, only two of which were contested by the employee. The court held that the one undisputed reason was sufficient to entitle to the employer to summary judgment: "So long as at least one of the reasons goes unchallenged—and that reason standing alone would have been sufficient to justify the termination—the fact that [the employee] raises genuine factual issues with regard to the other reasons is of no import." *Tipsword,* 918 F.Supp. at 223. The Seventh Circuit Court of Appeals affirmed. *See Tipsword,* 106 F.3d 403, 1997 WL 9771 (7th Cir.1997). Similarly, here Mr. Johnson has not disputed, and cannot dispute that his failure to obtain a customer signature as required by company policy and his forgery of a customer's signature on a legal document were enough—standing alone—to justify his termination. *Cf. Williams v. Boorstin,* 663 F.2d 109, 117 (D.C.Cir.1980) (Plaintiff "or any other ... employee, civil rights advocate or otherwise ... could simply never be entitled to, nor expect to retain, his or her job after establishing such a formidable record of lying to his employ-

er"); [4] *Thompson v. International Ass'n. of Machinists*, 614 F.Supp. 1002, 1014 (D.D.C.1985) (granting j.n.o.v. after trial of woman's Title VII and DCHRA claims alleging gender discrimination, court concluded, "Had plaintiff been a male conducting himself exactly as plaintiff did, this Court believes that defendants would have taken the same action in the interest of the [employer's] future"). In light of the foregoing, the bankruptcy court was right to grant summary judgment to Dworken on Count I, the DCHRA discrimination claim.

### C. *Mr. Johnson's Retaliation Claim*

 Count II asserts that Dworken violated the anti-retaliation provision of the DCHRA, D.C.Code § 1–2525, by "blackballing" him, i.e., endeavoring to prevent him from securing employment in the automobile sales field after his termination.[5] At the October 29, 1997 hearing, the bankruptcy court indicated that it would grant Dworken summary judgment as to Mr. Johnson's retaliation claim because the record lacked evidence to support such a claim and because he failed to file an affidavit pursuant to Federal Rule of Civil Procedure 56.[6] Consistent with Rule 56(f), and out of fairness to Mr. Johnson, the bankruptcy court deferred decision on Dworken's motion for summary judgment as to the retaliation claim pending a 45–day discovery period. The court then extended the time for discovery by order dated November 5, 1997.

Mr. Johnson, however, failed to submit any affidavits or further memoranda in opposition to the motion for summary judgment on the retaliation claim. Mr. Johnson does not deny that he failed to file an affidavit or undertake any discovery to gather support for his claim of post-termination retaliation. Rather, he asserts, "At the time plaintiff was ordered by [the bankruptcy] Court to respond to defendants' motion for summary judgment, this case was still subject to the automatic stay provision of the Bankruptcy Code ... and plaintiff's motion for relief from the stay was pending .... Plaintiff's counsel took this to mean that discovery would not begin until the automatic stay issue was resolved. Therefore, plaintiff did not undertake any discovery." Supp.Opp. to Mot. for Summ.J. at 7. Mr. Johnson's counsel could and should have contacted the bankruptcy court if there were uncertainty over that court's order permitting discovery. Instead, the plaintiff assumed, in the face of an order establishing a period for discovery, that no discovery should be conducted. Rather than conduct discovery according to the plain language of the order or contact chambers to get clarification, the plaintiff let approximately two months elapse without doing so. This court cannot say that the bankruptcy court erred in refusing to order yet another period for the plaintiff to conduct discovery in support of his post-termination retaliation claim.

**4.** The court refers to *Williams v. Boorstin* only for comparison, not because its facts (lying to the employer) are foursquare with the facts here. The court reiterates that it has *not* accepted the defendants' contention that Mr. Johnson lied to Dworken when asked if he had obtained the customer's signature. Rather, because Mr. Johnson is the non-movant, the court accepts *arguendo* Mr. Johnson's assertion that he truthfully answered in the negative when asked whether he had obtained the customer's signature.

**5.** To the extent Mr. Johnson also alleges that his termination itself was in retaliation for his prior protected activity, that claim fails for the same reasons his discrimination claim fails. This section addresses only the bankruptcy court's decision on his claim of post-termination retaliation.

**6.** Rule 56(e) provides, in pertinent part, "Supporting and opposing affidavits shall be made on personal knowledge.... \*\*\* When a motion for summary judgment is made and supported as provided in this rule ... the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(e).

Ultimately, instead of offering probative evidence of post-termination retaliation, Mr. Johnson offers only the speculation that "It is highly possible that through deposition cross-examination, plaintiff will adduce evidence that defendants attempted to interfere with his efforts to obtain comparable employment...." Supp.Opp. to Mot. for Summ.J. at 7–8. Consequently, the bankruptcy court properly granted summary judgment to Dworken on Count II, the retaliation claim.[7]

### D. *Mr. Johnson's Claim against Mr. Dworken*

In Count III, Mr. Johnson alleged that the individual defendant, Dudley Dworken, aided and abetted the allegedly discriminatory and retaliatory conduct of the corporate defendant. Because summary judgment was properly granted to the corporate defendant on counts I and II, however, the individual defendant cannot be held liable for aiding and abetting. Accordingly, the bankruptcy court properly granted summary judgment to Mr. Dworken on Count III.

### V. CONCLUSION

For the foregoing reasons, the court concurs with the reasoning of the United States Bankruptcy Court. Accordingly, the court shall adopt the bankruptcy court's proposed findings of fact and conclusions of law and affirm the order granting summary judgment to both defendants on the DCHRA claims.

An appropriate Order directing the parties in a fashion consistent with this Memorandum Opinion is separately and contemporaneously executed and issued this 29th day of October, 1999.

In re Curtis Dworken Chevrolet, Inc., Debtor.

Ronald Johnson, Plaintiff,

v.

Curtis Dworken Chevrolet, Inc. and Dudley Dworken, Defendants.

Case No. 97–00644.

Adversary Proceeding No. 97–00036.

### PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW AS TO CLAIMS AGAINST DUDLEY DWORKEN

S. MARTIN TEEL, Jr., Bankruptcy Judge.

Pursuant to F.R.Bankr.P. 9033, the Bankruptcy Court makes the following proposed Findings of Fact and Conclusions of Law. A proposed Decision adopting these Findings of Facts and Conclusions of Law and a proposed Judgment are attached hereto.

### I

### FACTS

#### A. *Procedural History.*

The defendants filed the notice of removal of this proceeding from the Superior Court to the bankruptcy court on April 28, 1997. On June 25, 1997, the bankruptcy court held a status hearing at which the defendants stated they were planning to file a motion for summary judgment. The bankruptcy court did not set a discovery schedule.

On July 17, 1997, Johnson filed a motion in the associated bankruptcy case and requested the bankruptcy court to abstain from exercising jurisdiction over this adversary proceeding and to modify the stay to allow the prosecution of this proceeding in the D.C. Superior Court.

On July 18, 1997, the defendants filed their motion for summary judgment.

---

7. Rule 56(f) provides, "Should it appear from the affidavits of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may ... may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just."

On August 5, 1997, the bankruptcy court held a hearing on Johnson's motion for relief from stay. The court ruled that it would annul the stay and remand this proceeding back to D.C. Superior Court unless it granted the defendants' motion for summary judgment.

On August 22, 1997, Johnson filed his opposition to the motion for summary judgment.

In a decision entered on September 18, 1998, the bankruptcy court declined to act on the motion for summary judgment with respect to the plaintiff's discrimination and retaliation claims, pending a 45–day discovery period.[1] The plaintiff had 14 days after the completion of such discovery to file further memorandum or affidavits in opposition to the defendants' motion for summary judgment. The discovery period was further extended by an order entered on November 5, 1998, to November 13, 1998. The plaintiff has not filed anything further in opposition to the motion for summary judgment, even though his deadline for doing so expired on November 27, 1998.

The bankruptcy court has entered a final judgment as to the defendant Curtis Dworken Chevrolet, Inc. Because the claims against the other defendant, Dudley Dworken, are a non-core matter under 28 U.S.C. § 157(c), the bankruptcy court issued proposed findings of fact and conclusions of law as to those claims pursuant to F.R.Bankr.P. 9033. The judgment against Curtis Dworken Chevrolet, Inc. is entitled to collateral estoppel effect as to Dudley Dworken, unless and until the judgment is reversed on appeal. In any event, judgment in Dudley Dworken's favor is appropriate on the merits.

B. *Substantive Facts.*

In March 1996, Johnson was employed by Curtis Chevrolet as a used car sales manager. At that time, he had a lawsuit pending against Curtis Chevrolet in the District of Columbia Superior Court in which he claimed that his employer had discriminated against him on the basis of his race.

Johnson believed that Curtis Chevrolet was angry with him for pressing his discrimination claim, and that it was looking for an excuse to fire him. In fact, this was Johnson's second discrimination claim against Curtis Chevrolet.

On March 29, 1996, Johnson lent a customer, Luciano O'Tano, a car while O'Tano's car was in for service. Johnson failed to have O'Tano sign an assumption-of-liability form. That form would have required O'Tano to reimburse Curtis Chevrolet for any damage O'Tano caused to the car while it was in his possession that was not covered by insurance. On April 1, 1996, O'Tano had an accident and totaled the car.

When Johnson realized the serious implications of his failure to have O'Tano fill out the assumption-of-liability form, he filled out an assumption-of-liability form and signed O'Tano's name to it in what Johnson claims was an innocent exercise of "wishful thinking." Several days later, Dworken came into possession of that form.

It is not clear how Dworken came to possess the form. Dworken contends that Johnson gave him the form personally. Johnson contends that another employee saw it on Johnson's desk and gave it to Dworken. The court will view the facts in the light most favorable to Johnson and assume that another employee presented the falsified form to Dworken.

---

1. At a status hearing on October 29, 1997, the bankruptcy court had indicated that it would grant the defendants' motion for summary judgment with respect to Count II of the plaintiff's complaint because the record lacked evidence to support it and because the plaintiff had failed to file an affidavit under Rule 56(f) of the Federal Rules of Civil Procedure. But the bankruptcy court had not focused on the lack of any discovery in the proceeding.

Dworken also asserts that Johnson lied to him by telling him that O'Tano had signed the form. He states that it only became clear to him that O'Tano had not signed the form after meeting with O'Tano and conducting interviews of several employees. Johnson disputes this contention and states that in fact, he affirmatively told Dworken that O'Tano had not signed the form. Once again, the court will view the facts in the light most favorable to Johnson and assume that he represented to Dworken that O'Tano had not signed the form.

Once Dworken became aware that O'Tano had not signed the form, he fired Johnson. On April 9, 1996, Daniel Franklin, the General Manager at Curtis Chevrolet, filled out a termination report stating that Johnson was fired for "Failure to follow company policies and misrepresenting facts to management."

Dworken has submitted an affidavit stating that Johnson was fired for three specific reasons: (1) failing to obtain a customer's signature on an assumption-of-liability form, (2) lying regarding a customer's execution of the form, and (3) attempting to forge a customer's signature on the form.

## II

### ANALYSIS

■ The judgment in favor of Curtis Dworken Chevrolet, Inc., unless reversed on appeal, is entitled to collateral estoppel effect as to the claims asserted against Dudley Dworken. But even disregarding collateral estoppel, judgment against Dudley Dworken is appropriate on the merits. Count I was directed against the corporate defendant as the employer of the plaintiff. Count II was also directed against a single "defendant," presumably the corporate defendant. For the reasons set forth below (which also formed the basis for the bankruptcy court's granting summary judgment in favor of that defendant), Counts I and II must be dismissed. Count III, as discussed below, was an "aiding and abet-

ting" count against Dudley Dworken, which must fail because Counts I and II failed.

### A. Count I.

Under the District of Columbia Human Rights Act ("DCHRA") D.C.Code § 1–2512:

(a) General.—It shall be an unlawful discriminatory practice to do any of the following acts, wholly or partially for a discriminatory reason based upon the race ... of any individual:

(1) By an employer.—To fail or refuse to hire, or to discharge, any individual; or otherwise to discriminate against any individual, with respect to his compensation, terms, conditions, or privileges of employment, including promotion; or to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities, or otherwise adversely affect his status as an employee[.]

There are three steps to proving discrimination in violation of DCHRA. First, a plaintiff must establish a *prima facie* case of discrimination. Once the plaintiff has done so, the burden then shifts to the employer to demonstrate a legitimate non-discriminatory reason for plaintiff's termination. Finally, if the employer offers such a reason, the plaintiff must prove that the employer's stated reason is actually a pretext for discrimination. *Arthur Young & Co. v. Sutherland*, 631 A.2d 354, 361 (D.C.1993).

1. *The Plaintiff has Offered Sufficient Evidence to Permit a Finder of Fact to Find a Prima Facie Case of Race Discrimination.*

To establish a *prima facie* case of race discrimination under the District of Columbia Human Rights Act, the plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the job from which he was terminated; (3) his

termination occurred despite his employment qualifications; and (4) his termination was based on the characteristic that placed him in the protected class. *Blackman v. Visiting Nurses Ass'n,* 694 A.2d 865, 868–69 (D.C.1997).

As the bankruptcy court held at the hearing on October 29, 1997, viewing the evidence in Johnson's favor, Johnson has established a *prima facie* case of race discrimination. Johnson is a member of a protected class. With respect to whether he was qualified for the job from which he was terminated, the defendants have made no allegations that Johnson did not possess the general skills required by a used car sales manager. Their allegation that he violated company policy in one instance does not show a lack of general qualifications for his position. Johnson was fired despite the fact that he was generally qualified to be a used car sales manager. Finally, the fact that Johnson succeeded on his first discrimination claim against Curtis Chevrolet suggests that Johnson may have been fired because of racial animosity by his employer.

2. *The Defendants Have Offered a Legitimate Nondiscriminatory Reason for Terminating Johnson's Employment.*

At the status hearing, the bankruptcy court opined that once it stripped away all the disputed facts before it, the defendants had a legitimate non-discriminatory reason for firing the plaintiff. The bankruptcy court found that the plaintiff had acted grossly irresponsibly by leaving the falsely signed assumption-of-liability form on his desk when it was likely that his employer would be looking for the document and might rely upon it in recovering from O'Tano. The bankruptcy court posited that this negligent behavior would constitute a sufficient basis for dismissal even if Johnson did not intentionally present a forged document to his employer. Johnson's negligent behavior, however, was not offered by the defendants as one of the grounds for having fired him.

The bankruptcy court later recognized the error in its tentative decision. Under *Lanphear v. Prokop,* 703 F.2d 1311 (D.C.Cir.1983), a court cannot grant summary judgment by substituting its own reason for the one offered by the defendants as the basis for terminating employment. A court's substitution of its own reason would run

directly counter to the shifting allocation of burdens worked out by the Supreme Court in [*McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)] and [*Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)]. The purpose of that allocation is to focus the issues and provide plaintiff with 'a full and fair opportunity' to attack the defendant's purported justification. That purpose is defeated if defendant is allowed to present a moving target or ... conceal the target altogether.

[T]he defendant must clearly set forth, through the introduction of admissible evidence, the reasons for the plaintiff's rejection.... Placing this burden of production on the defendant thus serves simultaneously to meet the plaintiff's prima facie case by presenting a legitimate reason for the action and to frame the issue with sufficient clarity so that the plaintiff will have a full and fair opportunity to demonstrate pretext.

*Lanphear,* 703 F.2d at 1316 (quoting *Burdine,* 450 U.S. at 255–56, 101 S.Ct. 1089 (footnote omitted)). Because the plaintiff's irresponsible behavior was not the reason articulated by the defendants for firing him, the plaintiff has not been given a full and fair opportunity to respond to that contention and to demonstrate pretext. Therefore, the court will look to the reasons offered by the defendants.

Johnson has had a full and fair opportunity to respond to the defendants' conten-

tion that he was fired for misrepresenting facts to management. That contention was more specifically delineated in Dworken's affidavit. There, Dworken listed three ways that Johnson misrepresented facts, including Johnson's forgery of O'Tano's signature on the assumption-of-liability form. The defendants' allegation that Johnson was fired for misrepresenting facts, and specifically for forging a customer's signature, satisfies the *de minimus* requirement of the second prong of the *McDonnell* test.

3. *The Plaintiff has Failed to Demonstrate that the Termination of his Employment was a Pretext for Discrimination.*

To prove pretext on a motion for summary judgment, the plaintiff "must produce sufficiently probative evidence to create a genuine issue 'both that the reason [offered for her termination] was false, and that discrimination was the real reason.'" *Randall v. Howard Univ.*, 941 F.Supp. 206, 211 (D.D.C.1996) (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515–17, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (Title VII case)), *aff'd* 132 F.3d 1482, 1997 WL 661785 (D.C.Cir.1997) (Title VII case).[2] In other words, a court will not grant summary judgment "if the record indicates that the plaintiff presented sufficient evidence to cause a reasonable factfinder to find that the plaintiff had a prima facie case, and that the employer's proffered nondiscriminatory reasons for its actions were not credible." *Aka v. Washington Hosp. Ctr.*, 116 F.3d 876, 881 (D.C.Cir. 1997) (Title VII case).

Johnson has failed to establish pretext because he is unable to show that one of his employer's proffered reasons for firing him is not credible—that he forged the assumption of liability form. He argues that the reason offered is false, as he simply signed the form as an exercise in

"wishful thinking" and he never intended to submit the form to management. Although Johnson's assertion may create a dispute as to whether he actually intended to commit forgery, that dispute is immaterial to the defendants' motion for summary judgment. The issue is not whether the defendants were erroneous in their determination that Johnson had "forged" the assumption-of-liability form, but whether they sincerely believed that he had done so at the time they fired him. *See Randall*, 941 F.Supp. at 212.

Looking at all the facts in the light most favorable to the plaintiff, the defendants' belief that Johnson intended to forge the signature on the form was highly credible under the circumstances: Johnson was the employee responsible for obtaining O'Tano's signature on the assumption-of-liability form before turning the loaner car over to him. He failed to do so, and O'Tano totaled the car. The "signed" assumption-of-liability form then turned up in plain view on Johnson's desk, at a time when management would obviously be searching for it. When management obtained the document, hoping to rely upon it in recovering from O'Tano, they discovered that the signature was false. Based upon these undisputed facts, it was perfectly logical for the defendants to conclude that Johnson had left the form out to protect himself without regard for the liability he might have caused the defendants had they relied on the forged document.

Johnson argues that the reason offered by the defendants is not credible because it first arose in the affidavit of Dworken filed in conjunction with the defendants' motion for summary judgment. This argument is flawed in two ways.

First, it is false. The termination report filled out by Daniel Franklin on April 9, 1996 states that Johnson was fired for "[f]ailure to follow company policies and

2. The court looks to federal statutes and case law for guidance in deciding DCHRA cases.

*Blackman,* 694 A.2d at 869 n. 3.

misrepresenting facts to management." Although the termination report does not contain the exact details of how Johnson misrepresented facts to management, forgery clearly falls in the penumbra of misrepresentation.

Second, it is irrelevant. Even if the allegation of forgery were only first specifically stated in conjunction with the motion for summary judgment, Johnson has had the opportunity to respond to that motion and to show that this allegation is not credible, that it was made up after the termination. This he has failed to do, even after the bankruptcy court granted him an additional 45–day discovery period on the issue of whether the proffered grounds of dismissal were not credible. Summary judgment is thus appropriate with respect to Count I.

## B. *Count II.*

Count II asserts that defendant Curtis Dworken Chevrolet, Inc. violated the DCHRA, D.C.Code § 1–2525, which provides:

> (a) It shall be an unlawful discriminatory practice to coerce, threaten, retaliate against, or interfere with any person in the exercise or enjoyment of, or on account of having exercised or enjoyed, or on account of having aided or encouraged any other person in the exercise or enjoyment of any right granted or protected under this chapter.

> (b) It shall be an unlawful discriminatory practice for any person to require, request, or suggest that a person retaliate against, interfere with, intimidate or discriminate against a person, because that person has opposed any practice made unlawful by this chapter, or because that person has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding or hearing authorized under this chapter.

> (c) It shall be an unlawful discriminatory practice for any person to cause or coerce, or attempt to cause or coerce, directly or indirectly, any person to prevent any person from complying with the provisions of this chapter.

At the October 29, 1997 hearing, the bankruptcy court indicated that it would grant the defendants' motion for summary judgment with respect to the plaintiff's retaliation claim because the record lacked evidence to support such a claim and the plaintiff had failed to file a Rule 56(f) affidavit as required by the Federal Rules of Civil Procedure. The bankruptcy court deferred acting on the defendants' motion for summary judgment as to the retaliation claim, pending a 45–day discovery period. Despite this additional time period, Johnson has filed no further memorandum or affidavits in opposition to the defendants' motion for summary judgment. Summary judgment is thus appropriate with respect to Count II.

## C. *Count III.*

Count III asserts that in violation of the DCHRA, D.C.Code § 1–2526, the defendant Dudley Dworken has aided, abetted, invited, compelled, and/or coerced the behavior alleged against Curtis Dworken Chevrolet, Inc. in Counts I and II. However, as summary judgment is appropriate with respect to the race discrimination and retaliation claims against Curtis Dworken Chevrolet, Inc., the defendant Dudley Dworken cannot be said to have aided, abetted, invited, compelled, and/or coerced that behavior. Therefore, summary judgment as to Count III is proper as well.

March 4, 1999.

/s/

S. Martin Teel, Jr.
United States Bankruptcy Judge